(No. 15631.—Judgment affirmed.)

ANNA CHRIST, Defendant in Error, vs. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed April 14, 1924—Rehearing denied June 16, 1924.*

1. INSURANCE—*when death from typhoid may be regarded as accidental.* A death from typhoid fever cannot be regarded as accidental unless it appears that the disease itself was occasioned by accidental means, and as the means by which the disease is acquired is the entrance of typhoid bacilli into the system, if the means of such entrance are accidental the resulting typhoid fever and its fatal effect may also be said to be accidental.

2. SAME—*ambiguous language in a policy will be construed in favor of insured.* Doubts as to the meaning of ambiguous language in an insurance policy will be resolved against the insurer and the doubtful provision will be liberally construed in favor of the beneficiary.

3. SAME—*effect where accident causes a disease resulting in death.* A disease causes bodily injury when it prevents the organs of the body from performing their functions and finally produces death, and an accident causing a disease which produces such result is the proximate cause of the death.

4. SAME—*when typhoid fever is contracted by accidental means.* Where an employee contracts typhoid fever by drinking water which has been accidentally polluted because of a defect in a valve which separated the potable from the polluted water the disease is contracted by accidental means, and the resulting death is accidental within the meaning of an accident policy providing "indemnity for loss of life, limb, sight or time by external, violent and accidental means."

5. SAME—*when death is caused by violent or accidental means.* Violence causing a bodily injury is not necessarily limited to physical force but includes the accidental introduction into the body of a foreign substance which causes death or extreme bodily injury and suffering, and is within the meaning of a policy insuring against death "by external, violent and accidental means."

DUNCAN and THOMPSON, JJ., dissenting.

HEARD, J., took no part.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

LIVINGSTON & WHITMORE, and WILSON, MCILVAINE, HALE & TEMPLETON, (SIGMUND LIVINGSTON, and J. F. DAMMANN, JR., of counsel,) for plaintiff in error.

RICHARD M. O'CONNELL, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

A writ of *certiorari* was awarded the Pacific Mutual Life Insurance Company to bring before us for review the record of the Appellate Court for the Third District by which a judgment recovered in the circuit court of McLean county by Anna Christ against the petitioner for $1130 was affirmed. The action in the circuit court was assumpsit upon a policy of insurance called a railway special accident and health policy. The policy stated in its commencement that it "provides indemnity for loss of life, limb, sight or time by external, violent and accidental means, and for loss of time by sickness, to the extent herein provided," and insures William H. Christ, as a boiler-maker's handy man, in the principal sum of $60 per month accident indemnity against the effects of bodily injuries sustained during the term of the policy and caused solely by external, violent and accidental means, (excluding suicide, sane or insane, or any attempt thereat, sane or insane,) and in the sum of $60 per month sickness indemnity against the effects of sickness. The declaration in a single count containing a copy of the policy, averred that the death of the insured, Christ, who was a son of the plaintiff, the beneficiary in the policy, occurred February 17, 1920, and was produced solely through external, violent and accidental means, to-wit, by accidentally drinking polluted water on February 3, 1920, believing such water to be pure and fit for drinking purposes.

The plea was the general issue, and the evidence was all contained in a stipulation of facts showing that the insured was employed in the railroad shops of the Chicago

and Alton Railroad Company as a boiler-maker's helper, on February 3, 1920; that at that time, and for a year previous, there had been two systems of water pipes in the shops,—one used for conveying water for drinking purposes for all employees in the shops, and the other conveying water for other purposes, such as filling engine tanks, but not for drinking purposes. The two systems of pipes were entirely separate and independent except for one connection at which there was a gate valve, which kept the water in either system from flowing into the other. The water for both systems was supplied by the city of Bloomington from its regular water mains. During January and February, 1920, there was a shortage of water, by reason of which the amount of water supplied by the city to the railroad shops was curtailed, and on this account the railroad company during the month of January began pumping water from a small stream, known as Sugar creek, near the shops, and forcing such water into the system of pipes used to convey water for other than drinking purposes. Sewage from the cities of Bloomington and Normal emptied into Sugar creek a short distance above the point where the pumping was conducted, and on that account the water pumped was polluted by sewage and other putrid and decaying matter. Shortly before February 3 the valve at the connection of the two systems of water pipes became defective, by reason of which the polluted water in the system used to convey water for other than drinking purposes flowed into the system of pipes conveying water for drinking purposes and polluted the water in those pipes. This condition existed on February 3 and for a week before that date. About a week before February 3, the insured, while going about his usual duties, being uninformed of the polluted condition of the drinking water, several times drank water from the faucet of the system of pipes used to convey water for drinking purposes, believing each time that the water was pure and

harmless and fit for drinking purposes, though it was, in. fact, polluted. As a result of drinking such polluted water he became ill with typhoid fever, which had its cause in drinking the polluted water, and he continued sick with typhoid fever until February 17, when he died as a result of that disease. The insured complied with all the conditions of the policy. It was further stipulated that typhoid fever is an idiopathic disease, the result of a toxin created by germs taken by food or drink or contact with substances having germs, and the toxin is formed in the intestines. Subject to its materiality, it was further stipulated that the germs may be present in a person and not create a toxin and may be harmless, while in another person the same germs create the toxin and result in fever; that typhoid fever may be prevented by inoculation of anti-toxin; that it may be, and frequently is, carried by persons to others, such persons being known as typhoid carriers; that typhoid fever is usually not a fatal sickness, and that the percentage of fatalities is about eight per cent. It was stipulated that the controversy to be decided in this case is whether or not, under the foregoing stipulated facts, the defendant is liable under that part of the policy providing for death caused solely by external, violent and accidental means, or under that part of the policy which provides for payment in case of sickness or disease, and if so, the amount of the liability. The cause was submitted to the court without a jury, the issues were found for the plaintiff and judgment was rendered in her favor.

The only question presented by the record is whether the evidence tends to prove the allegation of the declaration that the deceased's death was produced solely through external, violent and accidental means.

Typhoid fever is a disease, and, as stipulated, it is idiopathic,—that is, a primary disease, not preceded and occasioned by any other disease. It is due to a specific germ, which is ordinarily taken into the system with food or drink.

A death by typhoid fever cannot be regarded as accidental unless it appears that the disease itself was occasioned by accidental means. The means by which disease is acquired being the entrance of the typhoid bacilli into the system, if the means of such entrance are accidental the resulting typhoid fever and its fatal effect may also be said to be accidental.

We have had occasion in a number of cases to define the term "accident" as used in accident insurance policies. In *Hutton* v. *States Accident Ins. Co.* 267 Ill. 267, we said that an effect which is the natural and probable consequence of an act or course of action cannot be said to be produced by accidental means. After citing several cases the rule announced in *Prudential Casualty Co.* v. *Curry*, 10 Ala. App. 642, was approved, that "an accident may be said to be an unforeseen or unexpected event of which the party's own misconduct is not the natural and proximate cause, and hence the result ordinarily and naturally flowing from the conduct of the party insured cannot be said to be accidental even when he may not have foreseen the consequences. * * * The happening of an event, to be properly termed an accident, must not only be unforeseen but without the design and aid of the person."

In *United States Mutual Accident Ass'n* v. *Barry*, 131 U. S. 100, the complaint charged that the insured jumped from a platform four or five feet high to the ground, and in alighting unexpectedly received an accidental jar and sudden wrenching of his body which caused a stricture of the duodenum, from the effects of which he died a few days later. It was urged that there was no evidence to support the verdict because no accident was shown. The court did not concur in that view, but said: "The two companions of the deceased jumped from the same platform at the same time and place and alighted safely. It must be presumed not only that the deceased intended to alight safely but thought that he would. The jury were,

312—34

on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that if a result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

The *Barry case* is a leading case, which is usually cited in cases on accident policies involving the question of what constitutes an accident. The language quoted was approved in *Higgins* v. *Midland Casualty Co.* 281 Ill. 431, which quoted from *Bryant* v. *Continental Casualty Co.* 107 Tex. 582, as follows: "The proper and true test in all instances of voluntary action is that defined in the *Barry case.* If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs which produces the injury, it is accidentally caused." In the *Higgins case* it was held that sunstroke was a bodily injury sustained solely through accidental means within the meaning of the policy. It was held to be an accident under the Workmen's Compensation act in *City of Joliet* v. *Industrial Com.* 291 Ill. 555. Anthrax, though a disease, is an accident under the Workmen's Compensation act if accidentally contracted in the course of the employment. (*Chicago Rawhide Manf. Co.* v. *Industrial Com.* 291 Ill. 616; *McCauley* v. *Imperial Woolen Co.* 261 Pa. St. 312;

*Turvey* v. *Brinton,* A. C. (1905) 230.) So is arsenical poisoning. (*Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378.) In *Stedman* v. *United States Mutual Accident Ass'n,* 123 N. Y. 307, however, death resulting from anthrax caused by contact with putrid animal matter containing anthrax bacilli was held not to be accidental within the meaning of a policy insuring against death from external, violent and accidental means. The taking of poison; (*Healey* v. *Mutual Accident Ass'n,* 133 Ill. 556; *Travelers' Ins. Co.* v. *Dunlap,* 160 id. 642; *Metropolitan Accident Ass'n* v. *Froiland,* 161 id. 30;) the inhaling of gas; (*Travelers' Ins. Co.* v. *Ayers,* 217 Ill. 390; *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472;) suffocation by drowning; (*Mallory* v. *Travelers' Ins. Co.* 47 N. Y. 52; *Clark* v. *Iowa State Traveling Men's Ass'n,* 156 Iowa, 201;) the eating of tainted food (*Johnson* v. *Fidelity and Casualty Co.* 184 Mich. 406,) or of poisonous mushrooms; (*United States Casualty Co.* v. *Griffis,* 186 Ind. 126;) the opening of a pimple; (*Lewis* v. *Ocean Accident Corp.* 224 N. Y. 18;) fright caused by the insured's horse running away while the insured was riding in a covered carriage and coming near colliding with other teams though no collision occurred; (*McGlinchey* v. *Fidelity and Casualty Co.* 80 Me. 251;) under ordinary circumstances are all accidental means by which bodily injuries are produced through which death sometimes results.

The cases cited are examples of the manner in which such events are viewed by the courts, not universally but so generally as to indicate the strong trend of adjudication toward holding death so caused to be within the terms of a policy insuring against death caused by "external, violent and accidental means." The liability of insurers against accidental injury for each of the injuries mentioned has been vigorously denied but is now generally recognized. The courts have followed the rule of interpretation which

resolves doubts as to the meaning of ambiguous language in an insurance policy against the insurer and requires a liberal construction in favor of the beneficiary. It has been claimed, and has sometimes been held, that where the insured person has done the precise act which he intended to do and his act has produced a consequence which he did not foresee there is no liability; that it is not enough that the injury was accidental but that the cause of the injury must also be accidental. Such a case was *Smith* v. *Travelers' Ins. Co.* 219 Mass. 147. The insured died from meningitis, caused by streptococcus germs carried into the brain from the middle ear through a hole in the mastoid bone. They were carried into the ear from the outer nose through the Eustachian tube by a nasal douche which the deceased had been in the habit of using for catarrh and which on this occasion he had "snuffed" more violently than usual. The douche was harmless, but the harm was done by the fact that the deceased drew it too violently into his nostril, by reason whereof it reached the Eustachian tube and was carried into the middle ear and thence into the brain. That there should be a hole in the mastoid bone through which germs could pass from the ear into the brain is very rare, occurring in only about one out of one thousand skulls. The court said that "the deceased did exactly what he intended to do. This particular act of inhalation, although harder or more violent that usual, was not, so far as appeared, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw; nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible

by the policy. It is not sufficient that the death, or the illness that caused the death, may have been an accidental result of the external cause, but that cause itself must have been not only external and violent but also accidental." In that case, however, it is expressly conceded that the decision is not inconsistent with our decision in *Healey* v. *Mutual Accident Ass'n, supra,* where the insured intentionally drank the substance but did not know that what he drank was a poison; or the case in which the insured ate oysters, exactly as he intended, but did not know they were unsound, (*Maryland Casualty Co.* v. *Hudgins,* 97 Tex. 124,) or inhaled gas unintentionally. (*Paul* v. *Travelers' Ins. Co. supra.*) The decision is, however, inconsistent with the *Barry case, supra,* where the insured did exactly what he intended to do in jumping from the platform, but in doing so something unforeseen, unexpected and unusual occurred which produced the injury. In this case the deceased did exactly what he intended to do in drinking from the faucet, but he intended to drink the water furnished by the city and not the sewage-polluted water of Sugar creek. It was the defect in the valve which was the accidental cause of his drinking the polluted water and taking into his stomach the bacilli which resulted in the typhoid fever and eventually in death.

In *Grosvenor* v. *Fidelity and Casualty Co.* 102 Neb. 629, where the policy insured against death by accidental means and the insured died from drinking carbolic acid, the judgment was reversed for another reason but it was held that there might be a recovery though death was due to the insured's voluntary act in drinking the acid. It was the view of the court that the unexpected event must be regarded as accidental even though the accident would not have happened but for the voluntary act of the insured.

Typhoid fever is always a disease, but it does not follow, as is argued for the plaintiff in error, that the manner in which the disease is contracted is immaterial, or, as is

assumed in the argument, that there was no bodily injury. Disease causes bodily injury when it prevents the organs of the body from performing their functions and finally produces death. An accident causing a disease which produces these results is the proximate cause of these results. Death from blood poisoning following an accident is the direct or proximate result of the accident. (*Central Accident Ins. Co.* v. *Rembe,* 220 Ill. 151; *Cary* v. *Preferred Accident Ins. Co.* 127 Wis. 67; *Western Commercial Travelers' Ass'n* v. *Smith,* 85 Fed. 401.) Hydrophobia is a disease, but its common cause is the bite of an animal, which is an accident.

In *Lewis* v. *Ocean Accident Corp. supra,* the insured punctured an ordinary pimple on his lip with a pin, the lip became infected, and his death followed in a few days from inflammation of the brain, caused by the infection. The court said the puncture of itself was harmless; that the infection unexpectedly caused "was something unforeseen, unexpected, extraordinary; an unlooked for mishap, and so an accident." Two other cases grew out of this same occurrence, (*Interstate Business Men's Accident Ass'n* v. *Lewis,* 257 Fed. 241; *Iowa State Traveling Men's Ass'n* v. *Lewis,* id. 552;) in which judgments recovered upon accident policies were affirmed.

In *Ætna Life Ins. Co.* v. *Portland Gas Co.* 229 Fed. 552, a suit was brought upon an employer's liability policy by which the insurance company agreed to indemnify the insured against damages on account of bodily injuries or death accidentally suffered by its employees. Certain employees of the assured in the course of their work contracted typhoid fever from the water furnished to them by the employer, on account of which the employer was compelled to pay damages to such employees. Action was brought to recover the amount of the damages which the employer was compelled to pay, and the only question presented for review was whether the harm done the workmen constituted

a bodily injury accidentally received or suffered by them within the meaning of the policy. The argument was made, as in *Smith* v. *Travelers' Ins. Co. supra,* that there was no accident but that in drinking the water the workmen were only satisfying an actual want, but it was held that there was an accident which occurred by reason of the unexpected fact that the water contained typhoid germs, the court holding that there was no substantial distinction between the case before it and the case which would have been presented if the water the employees had drunk had contained virulent poisons. The court cited and relied upon the case of *Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223, which was also a suit upon an employer's liability policy. The action was to recover damages which the employer had been compelled to pay to a hostler employed in its stables who had the care of horses which were afterward found to have been suffering from glanders and were killed. Barry, the employee, was directed to assist in cleaning up the stalls, but no notice was given to him that the horses had suffered from glanders. He was subsequently attacked by the disease and brought an action against the employer for negligently putting him to work on the horses and exposing him to the disease. He recovered a judgment, and the employer brought suit against the insurance company and recovered the amount which it was compelled to pay. It was held that the disease from which the employee suffered was due to an accident and that he sustained bodily injuries accidentally suffered. It was said: "The intention is, as has been said, to afford full protection and indemnity to the assured. Any accident that causes bodily injury in any way is included. Bodily injury is more commonly associated, perhaps, with physical force of some sort, but in the absence of anything in the policy limiting it to that, we do not see how or why it can or should be so restricted. A liability growing out of an accident which results in infecting the workman with a loathsome and dangerous disease, and thereby causes him

great and perhaps lasting injury, would seem to be as much within the spirit and intent of the contract as if the injury had been caused by a blow or some other equally obvious manifestation of force."

In *Vennen* v. *New Dells Lumber Co.* 161 Wis. 370, water for the boilers was carried in a different set of pipes from those in which water for drinking by the employees was carried, but the water from the two sets of pipes became mixed, and the deceased by reason thereof drank the polluted water, which caused him to have typhoid fever and die. In an action under the Wisconsin Compensation act, which provided for compensation where the injury was proximately caused by accident, it was held that the employee had sustained an accidental injury. It was an accident that the insured drank water containing typhoid bacilli as much as if he had drunk from a glass containing carbolic acid supposing it was clear water. The agency causing the accident—the bacilli—was external.

In *Paul* v. *Travelers' Ins. Co. supra,* (a case in which death was caused by inhaling gas,) the New York Court of Appeals held that the gas in the atmosphere, as an external cause, was a violent agency in the sense that it worked on the intestate so as to cause his death, and the fact that death was the result of accident, or is unnatural, imports an external and violent agency as the cause. In *Healey* v. *Mutual Accident Ass'n, supra,* we approved this proposition, and further held that where the death arose from accidentally taking and drinking poison, the injury resulting in death may be regarded as received through violent means; that poison taken into the stomach, producing death, may be treated as an external, violent means. The same principle applies to typhoid bacilli accidentally taken into the stomach. Violence causing a bodily injury is not necessarily limited to physical force, but the accidental introduction into the body of a foreign substance which causes death or extreme bodily injury and suffering is violent within the

meaning of the policy, as much as if the violence had been a blow.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

DUNCAN and THOMPSON, JJ., dissenting.

Mr. JUSTICE HEARD took no part in this decision.