Stephenson, J.
 

 The Industrial Commission of Ohio, plaintiff in error herein, will he referred to in this opinion as the commission, and Mary Armacost, defendant in error, will he referred to as claimant.
 

 On January 7, 1928, claimant filed with the commis
 
 *177
 
 sion an application for compensation for alleged infection to both eyes, caused by dyes in materials she handled. Her malady was diagnosed as chemical conjunctivitis.
 

 Her application was refused on the ground that she had not suffered a compensable injury. Application was made for rehearing in due time and a rehearing was had, and the commission made its finding to the effect that, from the proof, the condition complained of was not due to an injury received in the course of employment; that the commission had no jurisdiction of the claim and no authority to inquire into the extent of disability or amount of compensation claimed, and it was ordered that her claim be denied.
 

 From this finding, claimant took an appeal to the Common Pleas Court of Montgomery county. A jury was waived and the cause was submitted to the court. The court found claimant’s case was compensable. Error was prosecuted to the Court of Appeals of Montgomery county and that court affirmed the decision of the Court of Common Pleas. The commission prosecutes error to this court, to reverse the judgment of the Court of Appeals.
 

 Chemical conjunctivitis is not an occupational disease and if compensable at all it must be because it is the proximate result of injury received in the course of employment.
 

 Claimant was a saleslady in the dress goods department of the Elder
 
 &
 
 Johnson Company in Dayton, Ohio. She had worked there about seven years when this claim was heard. It appears from the record that claimant had some eye trouble intermittently during the years 1926, 1927 and 1928. To be more specific, she had one attack during each of these years and she was treated by the same eye specialist, Dr. W. J. Blackburn, of Dayton, Ohio.
 

 Claimant alleges in her petition that on or about the seventeenth day of March, 1927, the regular course
 
 *178
 
 of her duties as saleslady required the handling of ready-made dresses, the fitting and selling of same; that the dresses were dyed and printed with certain dyes, particles from which became attached to her hands and were blown about in the air surrounding her face; that these particles of coloring matter came in contact with the mucous membrane covering her eyes, and set up a violent irritation therein, rendering medical services necessary — and it is for this medical service she is asking the commission to pay.
 

 The commission, while admitting claimant’s employment and that in the course of such employment she was required to handle ready-made dresses, denies that the dyes or coloring matter in any wise caused the eye condition of which she complains.
 

 Claimant carried the burden of proving by the greater weight of the evidence that the dyes or coloring matter from the dresses were transplanted to the mucous membrane of her eyes, thereby causing the chemical conjunctivitis of which she complains, and that such transplanting was traumatic in fact and not in theory alone.
 

 Claimant states a plausible case, aside from the traumatic feature; but-has she proved it?
 

 This court will not weigh the evidence; but one of the assignments of error in this court is to the effect that the judgment rendered by the Common Pleas Court and affirmed by the Court of Appeals should have been in its favor, consequently this court must read the record in order to ascertain whether or not there is some evidence, however weak, to support the finding and judgment of the trial court; for if there is none, such finding and judgment should have been for the commission.
 

 Dr. Blackburn described claimant’s attacks in 1926 and 1927 as chemical conjunctivitis. He first thought that she had vernal conjunctivitis, in other words, “spring-time” sore eyes; but because the malady did
 
 *179
 
 not readily respond to treatment, and because of tbe history given him by claimant, he diagnosed it as chemical conjunctivitis. The last attack in 1928 the same doctor diagnosed as “pink-eye” or vernal conjunctivitis, and no claim for compensation was made in this instance.
 

 There is no testimony to the effect that particles of dye adhered to claimant’s hands and were communicated to her eyes therefrom by the rubbing process, or that such particles floated in the atmosphere in the store room in question, and there is no testimony to establish a causal connection between these particles and claimant’s eye condition. All that was proven was the fact that at the time complained of by claimant, she handled ready-made dresses; that her eyes became infected, she went to a doctor, told him the nature of her work and he diagnosed her case as chemical conjunctivitis because of its stubbornness. She says she never rubbed her eyes with her hands, and she washed her hands thrice daily, at least. The doctor made no microscopic examination. At no point in his testimony does Dr. Blackburn say that the particles of dye from the dress goods caused claimant’s conjunctivitis. He simply says that particles of dye could have caused the condition, but as a matter of fact he did not know what caused it.
 

 Claimant says that when she went to Dr. Blackburn for treatment for her eyes, he said to her: “Don’t touch them, don’t put your hands to them, it is the dyes and handling the merchandise that has caused your eyes to be infected. ’ ’
 

 This testimony was not objected to, but it has little or no weight in face of the fact that the doctor said he did not know what caused the condition.
 

 It would seem, even to a stranger to the science of medicine, that a microscopic examination would have developed the fact whether or not particles of dye had lodged upon the mucous membrane of claimant’s eyes,
 
 *180
 
 and that it could have been further ascertained whether or not the dress goods handled by claimant gave off dye particles. This microscopic examination was not made. Why? We do not know.
 

 To permit claimant in this case to participate in the State Insurance Fund would be to encourage speculation in cases of this character. Chemical conjunctivitis not coming within the category of occupational diseases defined by our Legislature, it would be necessary for claimant to allege and prove traumatic injury. She does, in a way, allege trauma, and Dr. Blackburn endeavors to, and probably does, from a medical standpoint, classify her affliction as the result of trauma. He says:
 

 “If you will refer to Deschwemitz, who is an eminent authority on diseases of the eye, you will find this kind of trouble mentioned under various forms of conjunctivitis. There are a lot of different kinds he mentions, among which are toxic conjunctivitis which he also classifies as traumatic, because due to some external irritant.”
 

 This probably fills the bill as a definition of medical trauma, but is it legal trauma? Is it the kind of trauma the General Assembly had in mind when it said, in the enactment of Section 1465-68, General Code, “Every employe * * * -who is injured * * * in the course of employment” shall be paid compensation from the State Insurance Fund?
 

 If it were proven in this case and this court should hold that when these particles of dye, so small that they could not be seen with the naked eye, came in contact with the uninjured mucous membrane of the eye, the legal requirements of trauma under .the laws of Ohio were satisfied, then we would be obliged to hold that when any microbe entered the human body from the outside, and lodged upon an uninjured mucous membrane that trauma resulted. Such a holding would upset all legislation relative to occupational
 
 *181
 
 diseases, as it is a well known fact that practically all disease is communicated to thé human body by means of some form of bacilli, a restricted form of microbe.
 

 For the purpose of the case let us admit that over a period of time the dress goods in question gave off dye particles and they were communicated to the eyes of claimant in the course of her employment. She is not within the purview of the Workmen’s Compensation Law. Her eye condition might be caused by a single particle of dye, or it might be caused by the accumulation of dye particles for days, weeks or months. She says nothing unusual happened to her. Hence there was no accidental injury, and the case comes squarely within the purview of
 
 Industrial Commission
 
 v.
 
 Cross,
 
 104 Ohio St., 561, 136 N. E., 283;
 
 Renkel
 
 v.
 
 Industrial Commission,
 
 109 Ohio St., 152, 141 N. E., 834;
 
 Industrial Commission
 
 v.
 
 Russell,
 
 111 Ohio St., 692, 146 N. E., 305;
 
 Industrial Commission
 
 v.
 
 Franken,
 
 126 Ohio St., 299, 185 N. E., 199;
 
 Industrial Commission
 
 v.
 
 Middleton,
 
 126 Ohio St., 212, 184 N. E., 835;
 
 Industrial Commission
 
 v.
 
 Crawford,
 
 126 Ohio St., 379, 185 N. E., 840; and
 
 Industrial Commission
 
 v.
 
 Lambert,
 
 126 Ohio St., 501, 186 N. E., 89.
 

 These cases are cited for the purpose of making it patent that there is no “twilight zone” under the laws of Ohio whereby a claimant can get compensation for a disease other than those enumerated by legislative enactment.
 

 The judgment of the Court of Appeals is reversed and final judgment rendered for plaintiff in error, the Industrial Commission of Ohio..
 

 Judgment reversed.
 

 Weygandt, C. J., Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.