## BURNS v EMPLOYERS LIABILITY ASSN

Ohio Appeals, 8th Dist, Cuyahoga Co

A. Mastic, Cleveland, and A. F. Gaughan, Cleveland, for plaintiff-appellant.

J. R. Kistner, Cleveland, for defendant-appellee.

## OPINION

By LEVINE, PJ.

In the Common Pleas Court, judgment was entered on motion of defendant-appellee, in favor of defendant-appellee, on statement of counsel for plaintiff-appellant, and the pleadings in the case. Appeal is prosecuted to this court, claiming error. Since judgment was entered on the pleadings and statement of counsel, we must regard the allegations of the pleadings and statement of counsel as true.

It is the general rule that a motion for judgment on statement of counsel and the pleadings is considered in the nature of a demurrer to the evidence and the pleadings. It becomes therefore essential that this court examine (1), the pleadings; (2), the statement of counsel to the jury.

The amended petition alleges that there was in force an accident and life insurance policy on the life of one Robert H. Burns; that the policy provided that in case of death the amount of the policy will be payable to Rhea L. Burns, his wife, who is the plaintiff herein.

The amended petition further states that Robert H. Burns met his death on January 1, 1934, by reason of poison and infection accidentally given to him while a guest of The Congress Hotel, Chicago, Illinois, for a period of four days, to-wit, October 26th to October 29th, 1933, inclusive; that by reason of said poisoning and infection he sustained bodily injuries which solely and directly resulted in his death on January 1st.

It will be observed that the allegation of the petition as to the cause of death is couched in general terms.

We now proceed to examine the opening statement of counsel for plaintiff-appellant. Without attempting to incorporate the complete opening statement, we will endeavor to give a summary or gist of the statement as follows:

Mr. and Mrs. Burns went to Chicago on October 26, 1933 and registered as guests and stayed at the Congress Hotel, a well known hotel in the city of Chicago. There was being held at the time, in the city of Chicago, what is known as the World's Fair. Millions of people came to visit Chicago during that season. Mr. and Mrs. Burns remained at the Congress Hotel from October 26th to October 29, 1933, inclusive. While there, they ordered their breakfast at the hotel each day as well as several other meals. The decedent, Mr. Burns, drank large quantities of water while at the hotel. Mr. and Mrs. Burns left Chicago after October 29, 1933. When they reached home, during the month of November, 1933, Mr. Burns became afflicted with loss of appetite and abdominal pains. Several physicians were callled in and he was ordered taken to St. Alexis Hospital. He was operated upon and the doctors found that he was suffering from an abscessed liver. They also found a large number of amoebae. Amoebae is a living being, or "bug" which eats into the tissue. During the period of June, 1933, until January 1, 1934, there occurred in the city of Chicago, settling around Hotel Congress, an epidemic of amoebic dysentery. Chiefly involved in this epidemic were two large neighboring down-town hotels, the Congress Hotel and the Auditorium Hotel. The two hotels had in part a common water supply. The epidemic was caused by reason of defective, worn out, and decayed construction in the hotel. In approximately forty rooms of the Congress Hotel there was a sewer stack which came down carrying the sewage from these forty rooms to the basement and over the cooling water tank in the hotel. Because of the heavy use of the rooms, and the pressure of the sewage, some of the sewage leaked into the cooling water tank. This sewage caused amoebae to be carried into the water tank and infected the same. Many people who drank this infested water, including the decedent, Robert H. Burns, became poisoned in consequence thereof, as this living organism called amoebae ate into the tissues, the livers and various other organisms. That the drinking of this infested water was the

cause of the death of Robert H. Burns. That he died as a result of accidental means.

Amoebae is a parasite which feeds on the tissues and the death of Robert H. Burns was caused by these parasites which ate into the tissues of his liver and his other organisms and thereby produced his death.

Upon the conclusion of this opening statement, the motion for judgment was granted. It is contended in behalf of defendant that disease caused the death of Robert H. Burns and that the same is not covered by the accident policy in this case.

The particular provision of the policy which we are called upon to construe, is as follows:

"For the term of twelve months the company hereby insures against bodily injuries sustained during said terms, solely and independently of all other causes through accidental means."

It is urged by counsel for the defendant that this language does not contemplate damage and destruction of the body through the ravages of disease.

We are referred to the case of **Industrial Commission v Armacost, 129 Oh St 176, 1 O.O. 544**, Syllabus 2, as follows:

"There is a distinction between medical and legal trauma. The medical trauma produced by a microbe, or a microscopic foreign substance, coming in contact with an uninjured mucous membrane of the human body during an uncertain period of time, is not such trauma as is contemplated by the Workmen's Compensation Law."

We are called upon to construe the language of the policy cited above and give to it a liberal construction in order to determine the intention of the parties. The term "accident or accidental means" has been a subject of much discussion.

In Couch, Encyclopedia of Insurance Law, §1137, Volume 5, is found a complete collection of definitions adjudged by the courts, both State and Federal, as to the meaning of the term.

In Ripley v Railway F. Ins. Co. affirmed in 15 Wall U. S. 336, the court said:

"The term 'accidental' as used in its ordinary popular sense means, and in that sense means 'happening by chance, unexpectedly taking place, not according to the usual course of things'."

If, in the act which precedes the injury something unforeseen, unexpected, unusual occurs which produces the injury, the injury has resulted through accidental means. An accident is the happening of an event without the aid or design of the person and which is unforeseen. Though the act be voluntary, resulting in something unforeseen, unexpected and undesigned, and not according to the usual course of things, it is considered an accident or by accidental means.

Having in view the rules of construction and the doctrine of proximate cause, it is difficult to separate the injury from the disease to the extent of holding that the insured died from the disease while in reality the disease was but one link in the chain. The disease was caused by contact with amoebae-infested water which the deceased drank at the Congress Hotel. The cause of death cannot reasonably be separated from the means producing it. Under the statement of counsel it is a fair and reasonable presumption that the danger was unforeseen, and the contact with that danger was without the insured's foresight, expectation, design, though a voluntary act. The amoebae-infested water reached the body by external means. It was unforeseen and without design and therefore accidental.

See Couch on Insurance, §1141, Note 46.

Thus, it was held that typhoid fever contracted by an employee from water furnished to him to drink, by the employer, arises out of bodily injuries accidentally inflicted. Aetna Life Ins. Co. v Portland Gas etc., Co., 229 Federal 552.

In Anna Crist v Pacific Mutual Life Ins. Co., 35 A.L.R. 730, 312 Ill. 525, 144 NE 161, the court held:

"Death caused by typhoid fever resulting from germs taken by a workman from his employers' water system furnished for drinking purposes, which had become contaminated through a defective valve, is by external, violent and accidental means within the meaning of an insurance policy."

The opinion of the court which is extensive in presenting the various contentions of counsel, also presents the trend of the courts to hold that death so caused is within the terms of a policy insuring against death caused by external, violent

and accidental means. The courts have followed the rule of interpretation which resolves doubts as to the meaning of ambiguous language in an insurance policy against an insurer and requires a liberal construction in favor of the beneficiary.

The court stated on page 737 of the opinion:

"Where the death arose from accidentally taking and drinking poison, the injury resulting in death may be regarded as received through violent means; that poison taken into the stomach producing death may be treated as an external violent means. The same principle applies to typhoid baccili accidentally taken into the stomach."

In Elliott on Contracts, §4386 we find the following general statement of the law:

"A policy insuring against death or accident caused by external, violent or accidental means, includes in a proper case, death or bodily injuries accidentally caused by substance taken internally."

As we are limited to the opening statement of counsel for appellant and are bound to assume, for the purpose of the motion and judgment that the facts found in the pleadings and in the statement of counsel are true, it is difficult to escape the conclusion that the proximate cause of the death was the drinking of water infested by amoebae; that amoebae is a "bug" or living being which attacks the tissues of the body; that while it is true that before death occurred, disease set in, yet the intervention of the disease which finally caused his death, cannot be separated from the means producing it. The amoebae-infested water which was introduced into the body of the deceased, was an act unforeseen, unexpected, undesigned, happened by chance, and does not occur in the usual run of things. The disease, it seems, was but one link in the chain following the contact with the amoebae-infested water which constituted the accidental means directly causing the death.

It has been held that an injury caused by the sting of an insect which resulted in death, is an injury caused by accidental means. Omberg v U. S. etc. Assn., 101 Ky. 303, 40 SW 909.

The description of amoebae contained in the opening statement of counsel brings it within the same classification. It is difficult to distinguish between the bite of a bug on the exterior of the body, and a bug introduced into the body which bites into the inner tissues of the body.

In the case of Columbia Paper Stock Co. v Fidelity & Casualty Co., N. Y. 78 SW 320, 104 Mo. App. 157 it was held that kidney disease produced in a servant by handling infested rags in the discharge of her duties was within an employer's liability policy insuring against loss from liability on account of bodily injuries accidentally sustained.

In Delaney v Modern Accident Club, 97 NW 91; 121 Iowa 528, it was held:

"Death resulting from disease which follows as a natural consequence though not a necessary consequence of physical injury which is accidental, is an accidental death within the terms of an accident policy; the death being deemed the proximate result of the injury and not of diseases as an independent cause."

The deceased, in the case at bar. suffered an injury the moment he drank the amoebae-infested water furnished by the hotel. The amoebae, according to statement of counsel, bit into the liver and other inner tissues of the body. Disease followed in consequence thereof and death ensued.

"Violence causing a bodily injury is not necessarily limited to physical force, but the accidental introduction into the body of a foreign substance which caused death or extreme bodily injury or suffering, is violent within the meaning of the policy as much as if the violence had been a blow."

A large number of Industrial Commission cases preceding and following the case of Industrial Commission v Armacost, supra, draw a distinction between medical and legal trauma. We must bear in mind that the courts in all of these cases were called upon to interpret the Workmen's Compensation Act enacted by the legislature by virtue of constitutional authority. In both the constitutional provision and the Workmen's Compensation Law a distinction is made between injuries and occupational diseases. The court in interpreting the law sought to determine the intention of the legislature.

In **Industrial Commission v Cross, 104 Oh St 561**, the Supreme Court approved an order of The Industrial Commission refusing compensation in the case of Ezra Cross, an employee of the Park Department in

the city of Cincinnati, who contracted typhoid fever by drinking water from a spring contaminated with typhoid fever germs, located in the part where the employee was employed, which resulted in his death.

Reading the decision without analyzing the reasons set forth in the opinion by Robinson, J., would seem to bring it in conflict with the decision of the Illinois Supreme Court in Crist v Pacific Mutual Life Insurance Co., supra, but upon a careful perusal of the Ohio opinion it is made clear that the reason for the court's conclusion in Industrial Commission v Cross, is not that the court held in the view that it was not an accidental injury, but instead that the court held that the legislation enacted by the legislature of the state of Ohio, in the light of the constitutional provision enabling such legislation, intended to limit the kind of injuries compensable from the state insurance fund under the law.

The case of Crist v Pacific Mutual Life Ins. Co., supra, rests upon a private contract in the form of an accident insurance policy, between two private contracting parties and did not involve the construction of an Industrial Commission Act.

In Industrial Commission v Cross, page 564, the court clarifies the reason for its holding so as to leave no doubt that the court limited itself to the intention of the legislature when it enacted the Workmen's Compensation Act, in the following language:

"That a disease is an injury must be conceded, but by the same token it must also be conceded that an occupational disease is an injury. The constitution-makers however, did not regard occupational disease as included in the term 'injury' and so added it by specific designation. If, then, occupational diseases, which experience has demonstrated, follow certain occupations with certainty to a considerable proportion of the persons so occupied, are excluded from the meaning of the term 'injury' by what process of reasoning can we say that they intended to include diseases which occasionally occur without intending to include diseases which regularly occur?"

In the case at bar we are called upon to construe a provision of an accident policy which is a private contract between two private parties. We must determine the construction of it by the common purport of the words used and by the four corners of the contract itself.

The insurance company could have used language in the policy which would exclude liability in a case like the case at bar. The language, however, which was used in this policy, when liberally construed, and bearing a construction which men generally give such language, includes the case at bar.

We are of the opinion that the pleadings, consisting of the petition of plaintiff, appellant, and the statement of counsel for plaintiff, appellant, presented a prima facie case of liability; that the trial court erred in rendering judgment in favor of the defendant, appellee, on the petition and statement of counsel.

The judgment is ordered reversed, and the cause is remanded to the Common Pleas Court for further proceedings according to law.

TERRELL, J, concurs in judgment.
LIEGHLEY, J, dissents.