**GROVES, a. k. a. WATSON REED GROVES, Plaintiff, v. WORLD INSURANCE COMPANY, Defendant.**

Common Pleas Court, Trumbull County.

No. 59938. Decided September 17, 1952.

Arthur Palmer, Newton Falls, Sieman & Sieman, Warren, for plaintiff.

Hoppe, Day & Ford (Mr. Hewitt assisting), Warren, for defendant.

## OPINION

By BIRRELL, J.

In this case the trial was held and verdict of the Jury in Plaintiff's favor returned on May 22nd, 1952. Motion for judgment notwithstanding the verdict was filed immediately, and Defendant requested leave to File Brief thereon, which leave was granted. The Plaintiff's Counsel was absent until the early part of July by reason of his marriage, and did not file his Answer Brief until July 29th. The Court had the month of August for vacation. But by reason of the request of the Plaintiff that this matter be ruled upon, the Court did return to his office and spent a couple of days searching the law on this subject. Because of the numerous cases cited and the complexity of the matter involved, the Court came to the conclusion that he should not spend his vacation determining this particular Motion. That the ruling has been postponed until the present time is, of course, unfortunate.

During the trial at the close of the Plaintiff's evidence, some time was taken in the review of authorities on the sufficiency of Plaintiff's evidence to go to the Jury. On that hurried review the Court felt that substantial time was needed to properly determine that question, and that it was wiser at that moment to submit the case to the Jury. Now the same question, practically, arises upon this Motion, and the Court has had more time to fully investigate the law on this subject.

Plaintiff suggests two reasons whereby the evidence is sufficient to sustain the verdict, to-wit: (1) "moving the refrigerator constitutes an accidental bodily injury." (2) "the formation of a pulmonary embolism * * * constitutes an unexpected and accidental event."

With reference to the "pulmonary embolism," the Court is unable to find any cases in Ohio which substantiate this view. There appear to be numerous cases from other jurisdictions on various phases of this subject, of which the case of Handley v. The Mutual Life Insurance Company (Utah, 1944), 152 A. L. R. 1278: 147 P. (2d) 319, proclaims at the 8th paragraph of the syllabus:

"Where it clearly appears that surgical operation on insured set in motion definite particles of matter distinctly and directly traceable to operation, without which they probably would not have been generated or set in motion, and that action of such substance on vital organ caused insured's death, such death must be held to have been 'direct result of injury effected by accidental means' within double indemnity provision of life policy."

This conclusion apparently is based upon medical evidence that the "particles" referred to were set in motion by the operation, although the Court recites its summation of evidence in that respect as follows:

"It is quite possible if we knew more definitely how this embolism was formed and its direct causes, we might find that the third period of the pathological history of this case would itself satisfy the provisions of this policy. While the doctors definitely related the emboli to the operation, both of them testified that the reasons why emboli result from operations is not definitely known to the profession. Their causes lay in the realm of conjecture, whether due to a bruise of the vein, due to operation or some difference in timing or coagulation of the blood or other cause they could not say,"

The reasoning of the Court is summed up in the following statement:

"We need now go no further than to say that where it clearly appears from the evidence that the operation set in

motion definite particles of matter distinctly and directly traceable to the operation without which the probability is that they would not have been generated or set in motion and it specifically appears that the action of that substance on a vital organ caused the death of the patient, such death was directly caused by an injury effected by violent, external and accidental means."

Since the decedent in this case had received a violent and external injury more than ninety days before his death which, to recover under the terms of his policy, must have occurred within such period of time, it became necessary for this Court in order to sustain the verdict to determine that death from the operation could be held to be accidental. Precedent is cited in other Utah cases, and the decisions of other State Courts are discussed.

Were we to apply the holding of the Handley case to our present case, we are immediately confronted by the testimony of Dr. Kyle the only physician who testified on this subject, which is as follows:

Q. "Can you tell us whether or not you attributed the pulmonary embolism, or blood clot, which you say resulted in her death, to the after effects of the operation? Or on the contrary did you attribute it to some other cause?

A. "It's not known where emboli come from.

Q. "But did you form a conclusion?

A. "I have no right to form a conclusion, I have no idea where it came from."

This evidence in our case immediately distinguishes it from the Handley case, because there the Court states that "the doctors definitely related the emboli to the operation." Without such testimony no connection, accidental or otherwise, is shown between the operation and the pulmonary embolism.

The Utah Supreme Court includes, and apparently approves, in its Opinion, a strict definition of "accidental means" as follows: "Accidental means are those which produce effects which are not their natural and probable consequences. The natural consequence of means used is that consequence which ordinarily follows from its use, the result of which may be reasonably anticipated from its use, and which ought to be expected. The probable consequence of the use of a given means is the consequence which is more likely to follow from its use than it is to fail to follow."

A study of the Ohio cases leads this Court to believe that this liberal definition of accidental means has not been fully adopted in Ohio. From the citations at 22 O. Jur. 563 pp. 660-661, it appears that the latest pronouncement of our Su-

preme Court on this subject is found at the case of **Burns v. Assurance Corporation, 134 Oh St 222,** wherein Judge Gorman, in his Opinion at page 224 states: "Generally an accident is considered as an event proceeding from an unexpected happening or unknown cause without design, and not in the usual course of things." This, in itself, is substantially the same definition as used in the Handley case. But he concludes his Opinion at page 234 with the further statement "In order to create liability under a policy insuring against bodily injuries caused directly, solely and independently of all other causes, by accidental means, there must be evidence of some external or violent and accidental force or cause." At page 225 he likewise quotes with apparent approval from the observation of Lord Cockburn in the case of Sinclair v. Maritime Passengers Insurance Company, 121 Eng. Rep. 521, 524, as follows: "It is difficult to define the term 'accident' as used in a policy of this nature, so as to draw with perfect accuracy, a boundary line between injury or death from accident and injury or death from natural causes, such as shall be of universal application. At the same time we think we may safely assume that in the term 'accident' as so used, some violence, casualty or vis major, is necessarily involved." All of the statements in the opinion of Judge Gorman are important because the Supreme Court in that case reversed the Court of Appeals of Cuyahoga County, which Court had adhered to a definition as follows:

"If, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, the injury has resulted through 'accidental means.'"

See report of the Court of Appeals Opinion found at **10 O. O. 326, 26 Abs 52.**

In the light of this expression of our Supreme Court, to adopt a definition that the term "accidental," is absolutely synonymous with the adjectives, "unforseen," "unexpected," "undesigned," or "unusual" does not appear to sufficiently express the meaning intended by the terms of the Insurance Policy upon which this action is brought. The various cases determined by our Supreme Court since Burns v. Assurance Corporation, supra, have taken no exception to the remarks of Judge Gorman:

**Mitchell v. New York Life Ins. Co., 136 Oh St 551; Hassay v. Metropolitan Life Ins. Co., 140 Oh St 266 at p. 271; Shepherd v. Ins. Co., 152 Oh St at p. 17-18, 26.**

On the right of the Court or the Jury to draw an inference of an accident, both the case of Hassay v. The Metropolitan Insurance Company, opinion by Judge Zimmerman, and the

more recent case of Shepherd v. Insurance Company, opinion by Judge Hart, base their decisions on evidence that there has been proof of violent and external injuries from which in the absence of other evidence a presumption may be drawn that such injuries were accidental.

Other recent Ohio cases also appear to require some external force in connection with a true accident.

**Albers v. Continental Casualty Co., 87 Oh Ap 336** (Laughing); **Blubaugh v. Lincoln Nat'l Life Ins. Co., 84 Oh Ap 202** (hernia).

All of these cases cite with approval the older case of **New Amsterdam Casualty Company v. Johnson, 91 Oh St 155,** wherein failure of the internal organs to respond to the stimulation of a cold bath was held not to be accidental. Judge Nichols, in his Opinion at p. 158-9 says:

"Undoubtedly an accident, in both its technical and commonly accepted meaning, is an event which occurs without one's foresight or expectation and wholly undesigned, yet it is not true that every unusual, unforseen and unexpected event is an accident within the true meaning of the term as used in insurance policies."

It is argued that the terms of this policy only require that the death result from "accidental bodily injury," and that the cases above cited were all determined from interpretation of policies which used the terms "external, violent and accidental means." While these other policies may have emphasized the "external and violent" requirements by express use of these words, the absence of such words does not delete the concept of violence of some sort from the idea conveyed by the term "accidental," according to the above cited cases.

It must be noted that the holding of the Handley case supra, determines that every death following an operation may in all probability become accidental, because even the perfect operation may shock or bruise some weak portion of the body. Every person knows that the possibility of death accompanies every operation, even though perfect care and skill are used by the surgeons, physicians and nurses. I have searched Ohio Jurisprudence and Shepherds Citations for Ohio cases similar to the Handley case without success. In the Annotations following the Handley case at 152 A. L. R. 1286 it appears that there is a division of opinion among the various States and even the Federal Courts on this subject. An Ohio case is included among the group of cases collected as approving the Handley case, to-wit: **Mulloff v. National Accident and Health Insurance Company, 67 Oh Ap 464.** The facts of this Ohio case are that the physician "accidentally injected a poisonous compound into the insured's blood stream,

causing the insured's instantaneous death." There is little doubt that in that case an accidental happening occurred and Judge Skeel's well reasoned Opinion holds that the mistake of the physician was accidental. But this case, does not place Ohio in the position of following the standard that every death following a perfect operation is an accident without proof of some "accidental means." Our cases appear to hold that the result of a voluntary act on the part of the insured, while it may be unexpected, is not accidental unless some accidental means interferred to produce the unforseen and undesigned result.

In the construction of the word "accidental" the observation of Judge Nichols in the Johnson case, supra, at page 161 is very pertinent:

"It would amount to an unfair and unjust enlargement of the Company's liability, and would convert Accident Companies into both sick-beneficial and life insurance Companies: * * * and worse than this the apparent vice of it is that if countenanced it would inevitably result in the necessity of requiring constantly increasing premiums from the vast multitude of the laboring classes, as well as people of moderate means, who chiefly buy this character of insurance."

The enlargement of the field covered by the term "accidental" to follow the holding of Handley v. Mutual Life Insurance Company, supra, would practically result in making a life insurance policy out of every accident policy.

The Plaintiff's other theory in this case is that "moving of the refrigerator constituted an accidental bodily injury." Of course if the death of the insured following the perfect operation is held to be not due to "accidental bodily injury." it then becomes necessary, in order to bring the death within the terms of the policy to prove some "accidental bodily injury." The proof in this case indicates that on April 27th, 1952 the insured moved her belongings from one apartment to another. According to the testimony of Maria C. Bogas, the insured noticed some irregularity in her rug at the place where the refrigerator had been installed by the movers, and in her attempt to straighten the rug her face became flushed. This witness also, for good measure, says that she saw the insured move the refrigerator from one side of the room to the other. The proof of this moving was diluted somewhat after Jessie Powell, another of the Plaintiff's own witnesses averred that she and Maria Bogas were the ones who had moved the refrigerator. The Jury, of course, had the right to select and believe any part of the testimony on this subject. But, the testimony of moving the refrigerator or

straightening of the rug did not prove any accidental bodily injury. Maria Bogas likewise attempted to testify that she had been shown something protruding from the insured's body after the exertion above referred to. Her actual testimony on this subject was insufficient to show that anything had been caused by the alleged exertion, because a flushed face might result to the healthiest person from such exertion, without any injury.

The Ohio Courts appear to have required that some slip or unexpected weight or twist of the body in addition to mere exertion is necessary in order to satisfy the requirement of the term "accidental."

Casualty Co. v. Johnson supra at p. 159 "he did not slip or fall."

Burns v. Assurance Corp. supra at p. 226 "The element of accident must be found to exist in the means or cause which produced the bodily injury rather than the result."

Mitchell v. N. Y. L. Ins. Co. supra at p. 553 "were this contention (an increase of water pressure) supported by the record, a different question would be before us."

Likewise in order to support the occurrence of an accident Plaintiff's physician Dr. Kyle was interrogated as to whether the displacement of organs in the Plaintiff's body was caused by strain. The Doctor refused to so testify, but merely stated that a strain **might have** caused such an injury. He refused to raise this opinion to that of a **probability.** Such evidence, therefore, neither proved, nor even raised an inference that, an injury had been brought about by moving the refrigerator. Likewise, it did not rule out the probability that other causes had intervened to place the insured in the condition in which she was found to be at the time of the medical examination on June 14th, some forty-eight days after the occurrence which the Plaintiff claimed was the cause of the injury. The medical testimony therefor, cannot be relied upon to even show that any accidental bodily injury ever occurred. Where such a situation arises (either accidental means or bodily weakness) the observations of Judge Hart at pages 15 and 16 of the Shepherd case, supra, are pertinent:

"in such cases there still remains two possible explanatory hypothesis, and, where there is evidence under which the Jury might ascribe the injury to either one of these two, the law will indulge in no presumption as to the correctness of either; and that in the absence of further evidence the Plaintiff cannot go to the Jury, since the Court will not permit the Jury to guess which of two equally plausible explanations is correct."

The Defendant Insurance Company, in order to guard against the uncertainties which might arise, and to facilitate the certainty that an accidental bodily injury had occurred sufficient to cause death, had included in its contract that such accidental injury must "totally and continuously disable the insured and result, within ninety days, in * * * loss of life." The evidence was that the insured, after moving the refrigerator went to work the same afternoon and further was at work and drew her pay for every working day between the time of this alleged accident and the date at which she went to the hospital, forty-eight days later. Likewise she failed to consult any doctor for some time which, in itself, indicated uncertainty on her part. Likewise she continued to work regularly after consulting her physician which it is said she did the latter part of May. And it further appears that previous to issuance of this policy of insurance she had been operated upon and the subsequently displaced organs had been anchored. Dr. Kyle stated that these organs had slipped from this mooring which seems to have been the reason for the second operation. Since the evidence clearly shows that the insured was not totally and continuously disabled during the period between the accident and the operation, the Court is inclined to both doubt that an accident occurred and to the belief that, by the terms of the policy, the death could not be attributed to any uncertain occurrence on April 27th, 1950.

The Court has examined the cases cited by Plaintiff as to the liberal construction to be accorded to a requirement of total and continuous disability in the insurance policy. None of those holdings are upon facts sufficient to affect the situation as shown by the evidence in this case. Had evidence been produced from the employer or from fellow-workers, that this woman had been excused from performing her duties because of her condition while being retained on the payroll, some basis might have been shown for evading the strict requirement of total and continuous disability.

The Court, therefore, believes that under the law in Ohio the Court should have granted the Motion for a Directed Verdict at the close of the Plaintiff's testimony. Not having done so, upon the present Motion for judgment non obstante veredicto, this Court has come to the conclusion that such Motion should BE SUSTAINED. An Entry may be prepared accordingly.