---

(No. 11636.—Reversed and remanded.)
CLARENCE E. HIGGINS, Appellant, *vs.* THE MIDLAND CASUALTY COMPANY, Appellee.

*Opinion filed December 19, 1917.*

1. BENEFIT SOCIETIES—*an accident policy construed as insuring against sunstroke.* Where an accident policy insuring "against bodily injury * * * sustained solely through accidental means" contains a clause providing that blood poisoning, sunstroke, freezing, hydrophobia, etc., "as the result of such injury, shall be deemed to be included in said term 'such injury,'" the insured, who as a policeman suffers a sunstroke while regulating street traffic in the performance of his duties, is within the protection of the policy, as the sunstroke must be considered accidental and not the natural and probable consequence of his course of action.

2. SAME—*policy of insurance should be liberally construed in favor of the insured.* Where there is any ambiguity in a policy of insurance, all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder should be construed most favorably to the insured.

3. SAME—*whether notice of accident is given within a reasonable time is a question for the jury.* Whether notice of the accident is given within a reasonable time, in accordance with the terms of an accident insurance policy, is a question for the jury to determine by taking into consideration all the facts and circumstances shown by the evidence.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding.

B. JAY KNIGHT, and KARL J. MOHR, (ROY F. HALL, of counsel,) for appellant.

R. K. WELSH, and CLELAND, LEE & PHELPS, (McKENZIE CLELAND, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is a suit in assumpsit brought in the circuit court of Winnebago county for appellant, Clarence E. Higgins, by Grace Higgins, his conservator, against appellee, the Midland Casualty Company, to recover a weekly indemnity under the provisions of an accident insurance policy issued to the appellant by appellee June 20, 1912. A verdict was directed in favor of appellee and judgment entered thereon. On appeal to the Appellate Court that judgment was affirmed and a certificate of importance was granted, whereupon this appeal was taken.

The accident upon which the recovery was sought was alleged as a sunstroke suffered by appellant on June 4, 1913. The evidence showed that he (Higgins) was, and had been for months, a traffic policeman in the city of Rockford, Illinois; that on the day in question he was stationed at the corner of Main and State streets, in that city, and in the usual and customary way was performing his duties as policeman, regulating the street traffic, at the time of the sunstroke; that he was a man of temperate habits and in good health. It is conceded that on the day in question he was employed as a policeman on the streets of Rockford; that it was a very warm day, and that by 4:30 P. M. he had been standing in the center of the street intersection for

some time; that when the sunstroke occurred he was compelled to leave his employment and go to his home; that shortly thereafter he was confined to his bed and later was taken to a hospital in said city. The evidence tends to show that as a result of the accident he suffered a complete physical and mental breakdown, from which he has never recovered.

It is conceded that the policy was in full force and effect at the time of the sunstroke. The policy provides, among other things, that appellant was insured "against bodily injury (herein called such injury) sustained solely through accidental means." The policy further provided in a clause known as "Special indemnities, section D," as follows: "Blood poisoning, sunstroke, freezing, hydrophobia, asphyxiation, unprovoked assaults, and choking by swallowing, as the result of such injury, shall be deemed to be included in said term 'such injury.'"

The chief question in dispute is whether the sunstroke was the result of "accidental means" as that term is used in the policy. Counsel for appellee insist that if the insured suffered the sunstroke when and while he was doing just what he intended to do and in the way he intended, such sunstroke is not sustained through accidental means. The authorities are not in harmony on this question. The principle involved has never been before this court for consideration or decision. The first and perhaps the leading decision relied upon by counsel for appellee is that of *Sinclair* v. *Maritime Passengers' Assurance Co.* 3 Ell. & Ell. 478. It was there said that a sunstroke is a disease, and that a disease "produced by the action of a known cause cannot be considered as accidental." That case was decided in England in 1861 under an accident insurance policy providing for indemnity in the event of "personal injury from or by reason of or in consequence of any accident," etc. There was no reference in that policy, so far as we can ascertain from a reading of the case, to a sunstroke, either

281 – 28

as a disease or as an accident. Similar to that case is *Dozier* v. *Fidelity and Casualty Co.* 46 Fed. Rep. 446. Perhaps as the result of those decisions a clause in more recent years has been added to accident insurance policies such as the one above quoted, which includes sunstroke as caused by accidental means. In those cases it was considered that a sunstroke could not ordinarily be held to be an accident; that the death of a sailor, if he suffered a sunstroke from the effects of ordinary exposure to the elements while in the line of his duty, could not be held to be caused by accident, but if by shipwreck or other disaster the sailor was compelled to quit the ship and take to the sea in a lifeboat and remained exposed to the heat of the sun in such manner as to cause his death then his death might properly be held to be the result of an accident. That is the argument of counsel for appellee in this case. To the same effect appear to be the decisions in *Semancik* v. *Continental Casualty Co.* 56 Pa. Super. Ct. 392, *Elsey* v. *Fidelity and Casualty Co.* (Ind.) 109 N. E. Rep. 413, and *Gallagher* v. *Fidelity and Casualty Co.* 148 N. Y. Supp. 1016. All of these cases were decided by intermediate courts of review and not by courts of final jurisdiction. If the reasoning in these cases should be followed there can be no question but that the judgment of the Appellate Court should be sustained by this court, but there are decisions in other jurisdictions which hold that a sunstroke caused by the sun's rays, happening under circumstances similar to those surrounding this sunstroke, should be held, under this policy, an accident. (*Bryant* v. *Continental Casualty Co.* (Tex.) 182 S. W. Rep. 673; *Railway Officials* v. *Johnson,* 109 Ky. 261. See, also, *Lovelace* v. *Travelers' Protective Ass'n,* 126 Mo. 104; *Hutchcraft's Exr.* v. *Travelers' Ins. Co.* 87 Ky. 300.) The opinion in *Bryant* v. *Continental Casualty Co. supra,* contains a most illuminating discussion on this question, reviewing and distinguishing practically all the authorities relied upon by appellee. In that case it was held that death by sunstroke,

under circumstances similar to those here under consideration, was as clearly an accident as was death by a ·stroke of lightning.

If the death of an insured person by sunstroke was due to accidental·means the law implies that his death was due to violent and external means. (*Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472; *Healey* v. *Mutual Accident Ass'n*, 133 Ill. 556.) This court has recently had occasion to consider and decide the meaning of the term "accidental means," as used in accident insurance policies, in *Hutton* v. *States Accident Ins. Co.* 267 Ill. 267, and there stated (p. 270) : "An effect which is the natural and probable consequence of an act or course of action cannot be said to be produced by accidental means." This court there reviewed several cases as illustrating what was meant by accidental means and what would be considered the natural and probable consequence of an act or course of action under certain conditions.  Other cases illustrating this same point are referred to at some length in the note to this case in 41 Ann. Cas. 1916C, 579.

Doubtless a leading case on the question of accidental means and recovery under an accident insurance policy is that of *United States Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100. That case is cited.in most of those referred to by counsel on either side of this case, and the reasoning in the decision of the Federal Supreme Court in that case is relied on by both counsel in this case to sustain their respective positions. The injured man in that case was a physician thirty years of age at the time of his death.  Before that time he was strong and robust, weighing from 160 to 175 pounds. With two other physicians he visited a patient who lived in a house behind a drug store. On coming out of the house they were on a platform which was four or five feet from the ground, and if they got off from the platform it was but a·short distance to the back part of the drug store, where they desired to go. The other two physicians jumped from the platform and alighted all

right, but Dr. Barry jumped after them, and his companions testified that he came down so heavily that it attracted their attention; that it sounded as if he struck on his heels instead of on his toes. The evidence showed that as a result of this jump he suffered an injury of the duodenum, was taken sick immediately and died from the result of the injury within a few days. The court, in discussing the question, said (p. 121) : "The two companions of the deceased jumped from the same platform at the same time and place and alighted safely. It must be presumed not only that the deceased intended to alight safely but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means." A recovery was had on the trial of that case, and that finding and judgment were sustained by the decision of the Supreme Court, it being held that the jump, although voluntarily and intentionally taken, was the means of the injury. It seems to us clear that this decision is in conflict with the argument of counsel for the appellee that if the insured suffered sunstroke when and while he was doing just what he intended to do and in the way he in-

tended to do it, such sunstroke was not sustained through accidental means. As was said with reference to the reasoning of the *Barry case* as applied to sunstroke, in *Bryant* v. *Continental Casualty Co. supra,* on page 678: "The proper and true test, in all instances of voluntary action, is that defined in the *Barry case.* If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs which produces the injury, it is accidentally caused."

In some of the decisions relied on by counsel for appellee, notably that of *Semancik* v. *Continental Casualty Co. supra,* which is the main case relied upon by the Appellate Court to sustain its judgment, it is reasoned that a recovery could only be had for an injury under this sort of policy by the determination of the courts that a sunstroke "was purely accidental and not a disease." This reasoning entirely overlooks the vital fact that in this policy, as in those there considered, a sunstroke was insured against, not as a disease but as an injury. It is earnestly insisted that if the sunstroke which brought about the injury of Higgins is held to have been an accident, it would, in effect, be to hold that every sunstroke suffered is an accident, and that therefore the wording of the policy, "sustained solely through accidental means," would be denied any force or meaning as bearing on this question. This conclusion does not follow. In *Continental Casualty Co.* v. *Johnson,* 10 Ann. Cas. 851, it was held that a sunstroke might be caused by artificial heat as well as by the heat of the sun, and that the term "sunstroke" should have that meaning in an accident policy, in the absence of any wording that would necessarily require a contrary conclusion. It is obvious that if a sunstroke may be caused by artificial heat,—something which is brought about and controlled by human agency,—such a sunstroke effected by such means may occur under such conditions as not to be an accident but purely by means of an agency employed voluntarily in the ordinary way. Nu-

merous illustrations have been given by opposing counsel as to what should be held to be an accident, and many illustrations are referred to in the various cases already cited. Counsel for appellee in their brief state: "If a man should walk into a room where he knew the temperature was 200 degrees Fahrenheit, believing that he would be able to withstand such heat, and should unexpectedly die from his voluntary act accomplished as intended, there would be liability. Again, if a man should voluntarily walk out in the blazing heat of the sun and go about his business in the way intended without being obliged to incur such exposure by reason of the happening of some fortuitous event, and should suffer an unexpected sunstroke, then such sunstroke would unquestionably be considered as accidental because unexpected, and there would be liability under a policy similar to that construed in the *Burroughs case."* (69 Pa. St. 43.)

It seems to us, under the reasoning of this court in *Hutton* v. *States Accident Ins. Co. supra,* and the cases there considered, that the results in the above illustrations of counsel should be construed as the natural and probable consequence of the acts in question and therefore could not be said to be produced by accidental means, while by the same line of reasoning Higgins' sunstroke in this case would not be considered the natural and probable consequence of his course of action in the line of his duty in controlling traffic at the street intersection. Had the proof shown that the temperature on that day was 130 degrees on the street in question and he had been attending to his duties bareheaded, then it might well be argued that the sunstroke was the natural and probable result of his action and not produced by accidental means. In *Lovelace* v. *Travelers' Protective Ass'n, supra,* cited with approval in *Hutton* v. *States Accident Ins. Co. supra,* the insured attempted to eject a man who was drunk and boisterous from the office of a hotel. In doing this he used no other means than his hands, and while making the attempt the other drew a pistol and

shot him, causing his death. The court there held that the death of Lovelace was an accident and not a risk voluntarily assumed, inasmuch as he had made the attempt to eject the other by force from the office of the hotel without knowing that the other was armed. Did Higgins, in this case, have any reason to assume that the natural and probable consequence of his acts along the line of his duties in controlling the traffic at the street intersection would be a sunstroke? Plainly not. The briefs show that the place where this sunstroke occurred is a busy street intersection, and we have a right to assume from the evidence that many other people were passing back and forth in the line of their regular duties across this street intersection on that day and that no other people so passing back and forth were stricken because of the heat. It would seem to require no argument, therefore, to conclude that from Higgins' duties at the intersection in question, although they were intentional and voluntary, a sunstroke would not be considered the natural and probable consequence of his course of action. As was said in *Bryant* v. *Continental Casualty Co. supra,* (p. 677) : A sunstroke befell him "without any human agency, and in the sudden, unexpected and unusual way in which he was affected by the heat as its cause, it had all the elements of an accident in its occurrence and result."

It is well settled, as a general rule, that a policy of accident insurance is to be liberally construed in favor of the insured, and in case there is any ambiguity in the policy the rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder should be construed most favorably to the insured. ( I0 Corpus Juris, 414.) This being so, we think the trial court erred in directing a verdict for the defendant, and the Appellate Court also erred in affirming that judgment.

The policy in question also provided for weekly indemnities "if such injury shall from the date of the accident render the insured continuously unable to perform any of his

business duties," and it is argued by counsel for appellee that the evidence shows that the plaintiff was not rendered continuously unable to perform any of his business duties. From the evidence in the record we cannot agree with this contention. We think it is clear that he attempted to perform his duties after the sunstroke but was unable to do so; that he could not keep his mind on the work, could not remember where he was, and had to be directed by a brother officer who was associated with him. Physicians also testified that he was absolutely helpless for some time after the accident; that his condition showed mental lapses and that he was unable to answer questions. From this evidence it appears that the insured was unable to perform his duties, or at least there was enough evidence to make that question one of fact, to be passed upon by the jury.

It is further insisted that there can be no recovery in this case because the written notice of the accident was not given until more than a year after the accident. The wife, Mrs. Higgins, was not appointed conservator until June 20, 1914, and within ten days of her appointment she gave notice of such accident and resulting disability to the company. The policy states that "written notice of accident, together with full particulars thereof, on account of which a claim may be made hereunder, must be given to the company at its home office in Chicago, Illinois, by the insured, the beneficiary or a legal representative as soon as possible after the accident." We think it was a question for the jury as to whether or not the notice was given within a reasonable time, taking into consideration all the facts and circumstances shown by the evidence, and that the court was not justified on this ground, as stated by the record, to direct a verdict by the jury upon this question.

The judgments of the Appellate and circuit courts will therefore be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*