**H. L. Wayne, Appellee, v. The Travelers Insurance Company, Appellant.**

**Gen. No. 26,360.**

1.  INSURANCE, § 419*—*what was cause of death in action on accident policy.* In an action on an accident insurance policy, evidence *held* to show that death was not caused by toxicity of a drug administered by hypodermic injection but was due to the disease of syphilis.

2.  INSURANCE, § 408*—*what are "accidental means."* The words, "accidental means," in the insuring clause of a policy do not apply where the means are voluntary and intelligent and the act performed without error, even though death should unexpectedly result; so where a physician in administering a hypodermic injection did exactly what he intended to do and followed the most approved method in the operation and there was no mistake in the medicine or in the manner of administering it, the unexpected death which followed was not effected by accidental means.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1920. Reversed with finding of facts. Opinion filed February 19, 1921. Rehearing denied February 28, 1921.

FRANK M. COX and ALBERT N. POWELL, for appellant.

CHARLES J. O'CONNOR and RODERICK H. O'CONNOR, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, the beneficiary in an accident insurance policy issued by defendant insuring John Beakley, who subsequently died, sued for $4,500, the principal sum of the policy, claiming that Beakley's death was caused by accident. Upon trial the jury returned a verdict for this amount with interest and upon this verdict the court entered judgment for $5,107.51, from which defendant appeals.

In some of the counts plaintiff alleged that Beakley's death was caused by a cut on his lip accidentally inflicted by a barber, but the evidence fails to support this claim. The gist of the other counts, which raised the substantial issue in the case, was that the insured on August 2, 1917, at Dallas, Texas, received a hypodermic injection of arsenobenzol by a reputable physician who was treating him for "an ailment," and that as an unexpected result of this injection and because the arsenobenzol was impure, making it dangerous, and because the quantity was excessive, and because the insured had special idiosyncrasies and an unusual idiopathic condition which neither the physician nor the insured knew existed, the death of the insured was accidentally caused. The defense is that death of the insured was not covered by the provisions of the policy, which insured

"Against loss resulting from bodily injuries, effected directly and independently of all other causes,

through external, violent, and accidental means.''

And the provision that

''This insurance shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections which shall occur simultaneously with and through an accidental cut or wound), or by any other kind of disease.''

Defendant says the evidence shows the death of the insured was caused or contributed to by syphilis. Misrepresentations in the application are claimed, but we shall not comment thereon.

We are of the opinion the evidence establishes that the death of the insured was directly contributed to by syphilis, from which he was suffering, and therefore, under the provisions of the policy above quoted, defendant is not liable.

The evidence tends to show that in the fall of 1911 John Beakley, then 22 years old, admitted to some of his fellow students in Albany, New York, that he had syphilis; at that time he consulted a doctor who diagnosed his disease as syphilis and advised him to have the Wassermann blood test. This test was made with a positive result, which was reported to the physician, who prescribed treatment for syphilis, including injections of Salvarsan. In the fall of 1916, Beakley was at Dallas, Texas, and in the spring and summer of 1917 was still suffering from syphilis in the tertiary or last stage. Dr. White, a physician of Dallas, first saw him in May, 1917, and on examination found symptoms typical of syphilis such as lesions of the nose, throat and lips, and the eyelids with an absence of eyelashes. Beakley informed the doctor that he had had two previous Wassermann tests which were positive in results. The doctor prescribed mercurial treatments, and also gave him an injection of Salvarsan, another the next week, and then a third. The doctor testified that he informed Beakley he was

in the last stage of syphilis and that the injections were for this disease; that after these injections the patient exhibited no evidence of any abnormal intolerance or idiosyncrasy against the drug. August 2 the doctor injected 0.6 grams of arsenobenzol. The witness described the technic of this operation, which was an injection in the left arm according to what is called the Mayo method. The manner of the injection seems to have been entirely regular and no question is raised in this respect. Within 30 minutes after this last injection the patient fainted and respiration was disturbed; a pulmotor was used under an experienced man, but in about 2 hours the patient died. The physician testified that no such result from the injection was expected. The post-mortem showed that the muscles of the throat were swollen, the membrane on the inside edematous, and the throat closed. Dr. White made out the death certificate, wherein he stated that the cause of death was edema of the glottis following an injection of arsenobenzol, 0.6 grams, and "contributory syphilis, duration five years," and testified that this statement in the certificate was correct. Witness further stated that syphilis is one of the worst blood diseases in the world. He also testified that in the administration of the injection there was no mistake made nor anything done that the witness did not intentionally do; that he had for years used this method in the treatment of syphilis; that the arsenobenzol was bought from a reputable drug store and the drug was distributed by a reputable drug company of New York; the laboratory preparing it has the reputation of being one of the best medical laboratories in the United States or in the world; that he had used arsenobenzol a great many times; it comes with one fixed dose in one bottle, and he gave the deceased one dose as put in the bottle by the chemist; that there was no evidence of any traumatic cut on any part of the deceased's body and

that he was given no history of any previous injury.

A number of physicians, who had not seen the deceased, testified for plaintiff and for defendant. There is virtually no conflict in what they say as to the general characteristics of syphilis and as to its treatment. The Wassermann test is for syphilis, and when it is positive it means that the person has the disease. Among other effects of syphilis is endarteritis, which is an inflammation of the inner wall of the arteries; this inner lining gradually becomes hardened and deposits are formed so that the arteries become occluded or stopped up. Edema of the glottis, or swelling of the throat, is a condition which in syphilis not infrequently causes death, the blood vessels in the throat being stopped up so that the tissues become filled with water. Arsenobenzol is a standard remedy for syphilis throughout the world; an injection of 0.6 grams is the usual average dose. The curative ingredient of Salvarsan or arsenobenzol is arsenic, and the administration of arsenic either by injection or through the stomach never has any effect upon the glottis; it never causes edema. Salvarsan was the name given to the remedy manufactured in Germany, but during the war the remedy was manufactured in this country and given the name of arsenobenzol. Their ingredients and curative processes are virtually the same.

The above evidence clearly establishes that death was not because of any improper method in making the injection, or because the quantity of the medicine was excessive, or because the insured had any special intolerance for the remedy.

Plaintiff's counsel apparently concede this, for special emphasis is laid upon the claim that the drug contained impurities which caused death. One doctor, testifying for plaintiff, was of the opinion that the cause of death was ''the toxicity of the arsenobenzol,'' and that such toxicity is an impurity in the drug. Another physician was of the opinion that the drug

used was "impure, or oxidized, defective." These answers, however, were given to hypothetical questions which were not in accordance with the facts developed by the evidence; they omitted the fact that at the time of the last injection the patient was in the last stage of syphilis. It was assumed that the patient was "healthy, cheerful and happy." The hypothetical man, with respect to health', was not the man which the evidence shows the insured to have been. One of these doctors stated that by impurity in the drug he meant its "toxicity" and that death was due "to the toxicity of that particular drug," meaning "the poisonous action." In view of the fact that arsenic, a well-known poison, is the active principle of the remedy, he could hardly have meant that the arsenic in the remedy was an impurity. The other physician for plaintiff was simply guessing as to the quality of the drug, for there is an entire absence of any proof as to any definite defect or impurity. Probably the injection of arsenic for the purpose of destroying the syphilitic germs has some tendency in the curative process to produce temporary activity in the germs; but such activity is no evidence of any impurity or defect in the drug. Other physicians testified, explaining in detail why syphilis causes edema of the glottis without any medication, and there is no denial of the testimony that 0.6 grams of arsenobenzol administered to a strong, healthy man of the age of deceased would not produce a serious reaction. Physicians testified that the insured at the time of the last injection was then due to die as the result of syphilis; that his death might have been expected 3 or 4 weeks before the time of the injection or a week later; that in his advanced stage of the disease death could be expected at any time and that the treatment would not be the cause.

We have adverted only to the more salient features of the evidence; consideration of the entire record

convinces us not only that plaintiff failed in the necessary quantum of proof to establish the cause of death as alleged in his declaration, but it is proven that John Beakley was suffering from the disease of syphilis, which directly contributed to his death. Hence, under the provisions above quoted the policy does not cover any loss from his death. Similar provisions have been held in many cases to bar a recovery where the facts are considerably less definite than in the instant case. Among these are *Central Acc. Ins. Co. v. Rembe,* 220 Ill. 151; *Crandall v. Continental Casualty Co.,* 179 Ill. App. 330, and cases cited in this opinion; *Robison v. United States Health & Accident Ins. Co.,* 192 Ill. App. 475; *Moore v. Illinois Commercial Men's Ass'n,* 166 Ill. App. 38; *Aetna Life Ins. Co. v. Ryan,* 255 Fed. 483. There is a long list of similar cases from other jurisdictions.

Another bar to recovery is found in the words, "accidental means," in the insuring clause. It is pointed out in many cases that these words are not the same as an accidental injury or accidental death. These cases hold, in substance, that where the means are voluntary and intelligent and the act performed without error, even though death should unexpectedly result, death is not effected by accidental means. Among such cases are *Higgins v. Midland Casualty Co.,* 281 Ill. 431; *United States Mut. Acc. Ass'n v. Barry,* 131 U. S. 100; *Smith v. Travelers' Ins. Co.,* 219 Mass. 147, and cases there cited; *Shanberg v. Fidelity & Casualty Co.,* 158 Fed. 1. Entirely applicable to the present case is the language in the opinion in *Riley v. Interstate Business Men's Acc. Ass'n* (Iowa), 152 N. W. 617:

"Thus it is apparent that to entitle one to recover, under a policy like the one in question, it is not sufficient to show that the death was accidental. Death is the result of some precedent act or condition. It is traceable to some cause. It is not sufficient, to

make the *cause accidental,* that it appear that the resulting death was unanticipated, unforeseen, and not expected as a result of the act done. It must appear that that which happened to produce the result happened through accident, in order that the proper foundation may be laid for the recovery. The policy provides recovery in the event of death, but only where death results from bodily injuries effected solely by external, violent, and accidental means.''

In Joyce on Insurance (2nd Ed.), vol. 5, sec. 2863, the author discusses at length the distinction between accidental death and accidental means, saying among other things:

''A person may do certain acts, the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.''

In the instant case the physician in administering the hypodermic injection did exactly what he intended to do and followed the most approved method in the operation. There was no error proven either in the medicine administered or in the manner of administering it. It cannot then be said that the unexpected death which followed, even if it could be called accidental death, comes under the terms of the policy insuring against loss effected by accidental means.

We prefer, however, to base our judgment upon our conclusion upon the facts, namely, that the evidence shows that death of the insured was effected and caused by the disease of syphilis from which the insured was suffering, and the judgment will therefore be reversed with a finding of facts.

*Reversed with a finding of facts.*

Holdom, P. J., and Dever, J., concur.

Finding of facts. We find that the death of John

Wayne v. The Travelers Ins. Co., 220 Ill. App. 493.

Beakley, the insured, did not result from bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, and we find that his death was caused directly or indirectly, wholly or partly, by the disease of syphilis from which he was suffering, and that the policy of insurance does not cover such a loss.