Estella Schroeder, Appellee, v. Police and Firemen's
Insurance Association, Appellant.

Gen. No. 9,117.

Opinion
filed April 24, 1939.

GUNN, PENWELL, LINDLEY & BURK, of Danville, for
appellant; HAROLD F. LINDLEY and HORACE E. GUNN,
of counsel.

STEELY, STEELY, GRAHAM & DYSERT, of Danville, for
appellee; WALTER V. DYSERT and H. J. HASCH, of
counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of
the court.

An appeal was taken from a judgment in the sum of
$2,000 rendered by the circuit court of Vermilion county
against the defendant appellant, Police and Firemen's
Insurance Association, a corporation, upon the verdict

of a jury in favor of plaintiff appellee, Estella Schroeder, beneficiary named in the insurance policy of William Schroeder, deceased.

The action is predicated upon a certificate of insurance issued by the appellant company which provides that there shall be payable to the beneficiary therein named at the death of such insured member the sum of $200 and which further provides for the payment of $2,000 to the beneficiary when the member "shall through external, violent and accidental means receive bodily injuries which shall independently of all other causes result—in the death of the member." The policy and by-laws further provide as follows: "I agree that the benefits of this Association so far as accidental injury is concerned shall not extend to any bodily injury, or death, happening directly or indirectly in consequence of disease—or to any death or disability which may have been caused wholly or in part by mental or bodily infirmities or disease."

The complaint contains two counts, the allegations of which are substantially identical. It alleges that William Schroeder was a fireman in the city of Danville; that on the date of his death while on duty at a fire, he upended a ladder, which accidentally came in contact with overhanging wires, and required him to lower it and to go through the physical exertion and strain of upending it again, and that such excitement, overexertion and strain upon his heart accidentally caused and brought about his death.

The defendant's answer denied that the insured's death was caused by external violence and accidental means, and denied that the accidental means, if any, acting independently of all other causes, caused the death and alleged that the insured died of natural causes or disease, namely, angina pectoris. Defendant admitted liability for and tendered payment of the $200 due under the death clause, but denied lia-

bility for the payment of the $2,000 under the accident clauses for which suit was filed.

It appears from the evidence that William Schroeder, deceased, a man about 46 years of age, had been employed by the city of Danville, for a period of 18 years as a fireman. On April 23, 1936, while on duty at a fire station, he suffered a severe attack of angina pectoris and became cold, clammy and unconscious. He was taken in an ambulance to a hospital, where he was revived by the administration of hypodermic heart stimulants and the use of ice packs, and a complete physical examination was made. The doctor found him to be suffering from pain in his chest and down his left arm and his illness was diagnosed as angina pectoris. He was treated for that ailment from April 23 to July 24, 1936, when he was permitted to return to his work as fireman. During this period, he received approximately 42 visits from his physician.

The evidence shows that angina pectoris is a disease of the heart, which comes in sudden seizures or attacks, some of which are very painful and severe and cause death almost instantly. The disease is incurable and becomes progressively worse. Between attacks and seizures the person subject to the disease may appear normal and healthy and may suffer no pain or discomfort, but excitement or exertion may bring on an attack or seizure at any time.

On November 1, 1936, William Schroeder drove the ladder wagon to a fire at a distance of six or seven blocks from the engine house, where he and another fireman were directed by the fire chief to place a ladder against the side of a house. One witness stated that the ladder weighed 50 pounds and another that it weighed 150 pounds, while one witness stated its length to be 25 and another to be 45 feet. In raising the ladder, it touched against some overhanging wires. He lowered the ladder in order to pass under the wire and placed

it upright against the house. Goth, the other fireman, then climbed up the ladder and went on the roof of the house to cut a hole for ventilation and to allow the smoke to escape. Schroeder climbed the ladder as high as the eaves of the house and remained there a few minutes when he was directed to descend from the ladder by fire chief Davis, who testified: "Schroeder came down and stepped to one side and I went up the ladder." Schroeder was later found lying unconscious on the running board of the fire truck with his arms hanging down. First aid treatment was given by a bystander in the way of artificial respiration and use of "smelling salts," but he never revived and apparently died in an ambulance on the way to the hospital.

A post-mortem examination was held by Dr. Wheatley and Dr. Dunham, both of whom testified in the case. No cuts, bruises nor outward marks of trauma were found on the body. It was ascertained that his heart was apparently normal except for certain white calcium deposits in the upper portion thereof and in the arch of the aorta and a condition indicating arterio sclerosis, and the cause of his death was determined and reported by the physicians to be angina pectoris. Upon direct examination, omitting the previous history of the case, medical testimony was given by Dr. Dunham and Dr. Wheatley in response to hypothetical questions that his death could have been caused by shock, overexertion or excitement. On cross-examination, including the element of the previous attack of angina pectoris, both gave it as their opinion that he had died of angina pectoris. Further expert testimony was given by Dr. Robert S. McCaughey, who had examined an electrocardiagram made on Schroeder at the hospital in April, 1936. He testified that the cardiagram showed thrombosis and was a classical picture of blood clotting in the heart muscle indicating angina pectoris. In answer to a hypothetical question, he

stated that Schroeder had a degenerative heart circulation and that the condition might have contributed to his death. He also testified that physical exertion would likely produce death in a man who had angina pectoris.

It further appears from the evidence that the deceased had filed a claim and collected disability insurance for a period of 13 weeks on the ground that he was suffering from angina pectoris during the period of such previous illness.

The defendant appellant contends that the verdict was contrary to the evidence and that prejudicial error occurred in the admission of certain evidence and in the refusal to admit certain other evidence, exhibits and hospital records and instructions to the jury offered by the defendant, which latter need not be passed upon in view of our decision herein. Defendant's motion for a new trial was denied and judgment entered on the verdict.

It is contended by the plaintiff that Schroeder's death was due solely to accidental means and was not contributed to by pre-existing disease. What actually occurred at the time of his attack or injury does not appear from the evidence. Several witnesses testified that at 7:00 o'clock that morning and at the time of leaving the enginehouse he seemed to be in good spirits and in a normal condition and suffering no pain; that he drove the hook and ladder wagon a distance of about eight blocks to the fire and until the time he was found lying on the running board, no evidence of any pain or heart attack are shown to be present.

The previous attacks of angina pectoris and the serious illness that followed were not disputed in the testimony. All the physicians stated that his condition was progressive and incurable and that under stress or strain a renewed attack of angina pectoris would likely follow. The inquest disclosed the impaired condition

of circulation, both in the heart and aorta, and when the history of the case was detailed together with the facts that had transpired on the morning of his death with the post mortem findings as detailed in the evidence, all physicians, both for the plaintiff and defendant, gave as their opinion when considering both the history of the previous attack and of the facts so related that his death was due to angina pectoris.

In the case of *Paoli v. Loyal Protection Ins. Co.,* 289 Ill. App. 87, 6 N. E. (2d) 909, the law applicable to contracts for recovery under accident insurance policies is thoroughly discussed. In that case it appeared from the evidence that the deceased was a man of good previous health, aged 57 years, who had taken a wheelbarrow to a lumber yard and was at the time of his injury lifting 95 pound sacks of cement on to the wheelbarrow from a stack of sacks. While in the act of raising a sack, he dropped it, took a few steps and fell down. He was taken to a hospital, placed in bed, became semiconscious and remained in that condition, growing gradually worse, fell into a coma and died three weeks later. A post mortem examination disclosed that an abscess of the brain had formed. A physician testified that in his opinion, at the time the deceased lifted the sack of cement, there was an alteration or impairment in the blood supply to the brain caused by a small hemorrhage due to the break or rupture of a small blood vessel, and that this condition resulted in thrombosis due to clotting which comprised the seat of an infection that later developed into an abscess in the brain. He testified that the deceased had no other condition or infirmity which could have caused his death. It was shown without contradiction that prior thereto, the insured had always enjoyed good health and was a strong, robust person and that while attempting to lift the sack of cement he suffered some impairment of the blood vessels of the brain, "and

suddenly fell and became paralyzed and unable to walk,'' which happening was the proximate cause of his death. The diseased condition that followed was entirely subsequent to and resulted from a proven accidental injury. The court there said (p. 97): ''The record is void of any evidence or any suggestion of any other cause or condition that might have caused his death.''

In the case of *United States Mut. Accident Ass'n v. Barry,* 131 U. S. 100, 33 L. Ed. 60, 9 Sup. Ct. 755, it is held that the term ''accident'' was used in an accident policy in its ordinary popular sense as meaning ''happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected''; and ''that if a result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means.''

In the *Barry* case, *supra,* the deceased was a doctor of the age of 30 years and was in the company of two other physicians. The other two jumped from a platform safely, but the deceased lit in such a way as to attract the attention of the others. He stated that he thought he was not hurt, but serious injuries followed the incident, from which deceased died. He did the thing he started out to do, and so far as the evidence shows, did it in the way he intended to do it, and some unforeseen thing entered into it. As said in *Paoli v. Loyal Protection Ins. Co., supra,* in commenting thereon: ''Perhaps he lit on his heels; maybe his legs were held unduly stiff. Nobody knows from the record just what happened.'' Then, in applying the principle to the facts in the *Paoli* case, the justice said: ''In the case at bar the man intended, of course, to lift

and place in his wheelbarrow the sack of cement. Perhaps he was standing in a position a little different from what would have been safe; perhaps the sack of cement turned out to be heavier than he anticipated, and consequently, the lift larger.'' Under the facts set forth in the *Paoli* and *Barry* cases, *supra,* it was held that the question of whether or not the death was due to accidental means was one of fact for the jury.

In the case of *Christ v. Pacific Mut. Life Ins. Co.,* 312 Ill. 525, 144 N. E. 161, in seeking recovery under an accident policy, it was shown that the insured had¯contracted typhoid fever from drinking contaminated water and died as a result thereof, and the same question was raised as to whether or not under the facts stated, the beneficiary could recover under the theory that the insured lost his life by ''external, violent and accidental means.'' In holding that there was a right to recover, the Supreme, Court said: ''The means by which disease is acquired being the entrance of the typhoid bacilli into the system, if the means of such entrance are accidental the resulting typhoid fever and its fatal effect may also be said to be accidental.''

When, however, there is an existing disease or bodily infirmity, which co-operating with the accidental means, results in death, the accidental means is not the sole and independent cause of death and there can be no recovery under the accident provisions of the policy.

The language quoted in the *Barry* case, which is recognized as a leading case, is approved in *Higgins v. Midland Casualty Co.,* 281 Ill. 431, 118 N. E. 11, and *Ebbert v. Metropolitan Life Ins. Co.,* 289 Ill. App. 342, 7 N. E. (2d) 336.

In the case of *Ebbert v. Metropolitan Life Ins. Co., supra,* insured met his death after the administration of an anaesthetic taken while undergoing a tonsillectomy and the beneficiary under the policy sought recovery of an additional amount under a double in-

demnity clause of the policy, which provided that in case death was the result "directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means,"—and not "caused by, or contributed to, directly or indirectly, or wholly or partially, by disease, or bodily or mental infirmity." The proof showed that the insured was suffering from disease, which was held by the court of review to have directly contributed to his death and the judgment of the lower court was reversed on the ground that "the preponderating weight of the evidence here indicates that the insured was suffering from disease which directly contributed to his death. The evidence also shows that his death was not the result 'directly and independently of all other causes of bodily injuries sustained through external, violent and accidental means.' "

In that case the authorities are fully discussed and distinguished. A similar case in which prior disease was a contributing cause is that of *Wayne v. Travelers Ins. Co.*, 220 Ill. App. 493, wherein recovery was sought in an action on an insurance policy, and the evidence was held to show that death was not caused by toxicity of a drug administered by hypodermic injection, but was due to the pre-existing disease of chronic syphilis. The court made the following finding of facts: "We find that the death of John Beakley, the insured, did not result from bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, and we find that his death was caused directly or indirectly, wholly or partly, by the disease of syphilis from which he was suffering, and that the policy of insurance does not cover such a loss."

In the instant case it is undisputed that the deceased had previously suffered a severe attack of angina pectoris of 13 weeks' duration and was confined in a hos-

pital or his home for a period of 3 months for which illness he had claimed and collected disability insurance; that the disease in question is progressive and incurable, and that sudden stress or strain upon the heart would tend to bring on a renewed attack and result in death at any time; that when this previous history of disease was considered, all of the physicians held the opinion that death was due to angina pectoris.

In view of the undisputed facts appearing in the record in this case, we hold the finding of the jury was contrary to the evidence on the issues submitted. Under the facts and circumstances in evidence, we find and hold, upon a rehearing herein, that the death of William Schroeder, the insured, did not result from bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, and we find that his death was caused directly or indirectly, wholly or partly, by the disease of angina pectoris and the degenerative condition of his heart from which he was suffering and that the policy of insurance does not cover such loss.

The judgment of the lower court upon said verdict will therefore be reversed with the above finding of facts.

*Reversed with finding of facts.*