### PRESTON v. ÆTNA LIFE INS. CO.
#### No. 9678.

United States Court of Appeals
Seventh Circuit.
April 14, 1949.

Rehearing Denied May 16, 1949.

DUFFY, Circuit Judge.

This action was commenced in the Circuit Court of Cook County, Illinois, upon a contract of accident insurance entered into in the State of Illinois. It was removed to the United States District Court by reason of diversity of citizenship and jurisdictional amount. This appeal is from a summary judgment dismissing the complaint.

At the threshold we are met with defendant's motion to dismiss the appeal upon the ground that same was not filed within 30 days of the judgment as prescribed by Rule 73(a), Federal Rules of Civil Procedure, as amended, 28 U.S.C.A. This court heretofore entered an order denying defendant's motion to dismiss, without prejudice to a renewal of the motion at the time of the hearing on the merits. Such motion was renewed.

At the time this action was removed from the State court to the District Court, the statute, 28 U.S.C.A. § 230*, permitted an appeal to be taken within three months after the entry of judgment or decree. Amendments to the Federal Rules of Civil Procedure were subsequently adopted, effective March 19, 1948. Rule 73(a), as amended, limited the time for taking an appeal to 30 days. The change with respect to the time in which to take an appeal is valid, Hart v. Knox County, Tenn., 6 Cir., 171 F.2d 45, 46, and controls unless validly changed to the former procedure under Rule 86(b). This latter rule provides that the amended rules "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."

Not within 30 days but within three months after the date of the judgment of dismissal, Judge Igoe[1] entered an order in which he specifically found that limiting the time to appeal to 30 days under new

Albert S. Barney and Edward J. Fleming, both of Chicago, Ill., for appellant.

Vincent O'Brien and Thomas J. Johnson, Jr., both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and MINTON and DUFFY, Circuit Judges.

* In Revised Judicial Code, see 28 U.

[1] Presiding in the absence of the trial judge.

rule procedure would work an injustice and that the former procedure should apply, and he granted leave to file the notice of appeal.

■ The purpose of the exception in Rule 86 in the original rules was to prevent injustice during the transition period from the old procedure to the then new procedure under the Federal Rules of Civil Procedure when they first became effective on September 1, 1938. This portion of the rule remained intact when the amendments to the rules were adopted in 1948. On both occasions it was recognized that during any transition period when old procedure gives way to a different procedure under new rules or amendments, confusion was likely to result as to which rules apply to cases commenced before the effective date of such changes, and that in fairness to the parties the district court should have the jurisdiction to permit continuation of the former procedure in those cases where application of the new procedure would work injustice or not prove feasible. The provisions in the exceptions to Rule 86, Federal Rules of Civil Procedure, and Rule 86(b), Federal Rules of Civil Procedure, as amended, are a considerate solution of the problem of devising a simple and expeditious method of transition from old to new practice. See: Holtzoff, New Federal Procedure and The Courts, p. 165.

■ Judge Igoe specifically found that denying permission to apply the former procedure would work injustice. Certainly it would not have been feasible under the circumstances then present to have ruled that the shorter time in which to take the appeal as specified in the new rules should apply. We hold that Judge Igoe did not abuse his discretion in permitting the application of the former procedure since the motion to permit the former procedure was made within the three-month period in which an appeal could be taken under the old rules. Therefore, the motion to dismiss this appeal is denied.

Defendant invites our attention to the per curiam opinion of this Court in Ray et al. v. Morris et al., 170 F.2d 498. True it is that this Court there granted the motion to dismiss because the notice of appeal was not timely filed, and also refused to grant relief under Rule 86(b). However, in that case appellant had not made a motion for application of the former procedure to the district court or to this court within the three-month period permitted by the old rules for filing the notice of appeal. The mere filing of the notice of appeal itself within the three-month period, without more, was in no way a compliance with the requirements of Rule 86(b) and, furthermore, having permitted the three-month period to expire, which was the maximum time allowed in which to appeal under the old procedure, it would have availed plaintiff therein nothing to have had the former procedure applied.

■ Turning to a consideration of this case on the merits, we must construe and interpret this Illinois insurance contract pursuant to Illinois law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. As the highest State court of Illinois has not passed upon the question here in issue, we are required to ascertain from all available data what the applicable State law is in the light of the decisions of the lower courts of that State.

The United States Supreme Court has recently ruled that federal courts in South Carolina need not follow the decisions of a Court of Common Pleas of that State, King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, even though such court has some limited appellate jurisdiction. It appeared, however, that the decisions of such courts in South Carolina are not reported, and that under State practice they are not considered as establishing precedents to be followed by other courts of the State.

■ However, it is now well established that federal courts are bound by the decisions of State intermediate appellate courts unless there is persuasive evidence that the highest State court would rule otherwise. Six Companies of California et al. v. Joint Highway District No. 13 of California, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; West et al. v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed.

139, 132 A.L.R. 956; Stoner v. New York Life Insurance Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284. In West et al. v. American Telephone and Telegraph Co., supra., 311 U.S. at page 237, 61 S.Ct. at page 183, 85 L.Ed. 139, 132 A.L.R. 956, the Supreme Court said:

"When an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. * * *"

Therefore, in order to ascertain the rule of decision of the State of Illinois, we must examine the decisions of the Illinois intermediate appellate courts which, unfortunately, are in conflict on the issue before us.

■ Nevertheless, we are admonished that difficulty in ascertaining what the highest State court may hereafter determine the law to be, applicable to the facts presented, is no reason for a federal court to decline to make a decision. Meredith et al. v. Winter Haven et al., 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

The insurance policy with which we are here concerned insured plaintiff "against loss resulting directly and independently of all other causes from bodily injuries sustained during the term of this Policy and effected solely through accidental means * * *" The policy also contained an exclusion clause reading, "The insurance under this Policy shall not cover * * * injury * * * or other loss caused directly, wholly or partly, * * * (2) by disease in any form * * *."

On October 20, 1944, while the policy was in full force and effect, plaintiff was seated at his desk, dictating. He had removed the shoe from his right foot because it was sore. While raising his right foot to put it on the desk the base of his great toe struck either the corner of the desk or the corner of the glass top covering the desk. Plaintiff felt immediate pain in the toe and later it became black and blue. Thereafter an ulcer developed on the toe which failed to heal. Gangrene set in and

on January 6, 1945, within the 90-day period prescribed in the policy, plaintiff's right leg was amputated below the knee.

Prior to striking his toe plaintiff had experienced pains in his right leg, the history of such pains and discomfort dating back to 1941. At times his right foot became white lacking the usual color of flesh, and felt numb and cold. For at least a year prior to October 20, 1944, plaintiff had been under medical treatment for circulatory trouble in his right leg, which had been diagnosed as peripheral vascular disease involving chiefly the arteries of the right leg, the underlying cause being arteriosclerosis. Plaintiff received treatment by exercise, massage and contrast baths which proved beneficial. There were intervals when he had no symptoms of pain. The condition in his leg became stabilized.

Dr. Jack's affidavit disclosed that after plaintiff left Johns-Hopkins Hospital in 1943 he got along very well. Pulsations returned to his right foot, and the foot was pink and alive, without numbness or pain. The doctor states, "Preston did remarkably well and there was a gradual improvement in his symptoms, with finally the disappearance of all symptoms; with the peripheral vascular condition stabilized and with circulation adequate the condition became a body infirmity of passive nature, not of itself sufficient to cause symptoms or ill effects of any kind."

Dr. Hamman states, "There can be no doubt that the ulcer resulted from the injury to the foot. However, it is equally true that had the circulation in the foot been perfectly normal, the injury would have rapidly healed. In a word, the underlying condition, that is, the impaired circulation in the foot, was the factor that prevented the ulcer from healing. Nevertheless, had the injury not have occurred the ulceration would not have developed spontaneously. Therefore, in one sense one might say that the ulcer was the direct result of the injury but this statement must be modified by adding that the ulcer, in all probability, would have healed had not the circulatory condition of the foot been impaired."

It was the opinion of the trial court that under the terms of the policy in question,

construed pursuant to Illinois law, where the insured suffered a loss as the combined result of accidental injury and pre-existing disease, a recovery could not be had. He therefore granted defendant's motion for summary judgment dismissing the complaint.

Before considering the various decisions relied upon by the plaintiff and the defendant, it should be kept in mind that the matter was before the trial court on defendant's motion for summary judgment under Rule 56, F.R.C.P. The court relied almost entirely upon the opinion evidence of physicians. Rule 56, F.R.C.P. should be "cautiously invoked." Associated Press et al. v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013. The purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try. Sartor et al. v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967. It is for the jury to say what weight, if any, should be given to opinion evidence. Sartor et al. v. Arkansas Natural Gas Corp., supra, 321 U.S. at page 627, 64 S.Ct. 724.

Here both plaintiff and defendant submitted opinion evidence of physicians. Some additional evidence, such as hospital records, reports of a clinical laboratory, and a statement by the plaintiff, was also before the court. The trial judge seems to have based his decision on the premise stated by him, " * * * it is agreed on both sides that the condition of the plaintiff's right leg contributed to the gangrene and amputation by preventing normal healing of the injury to the toe."

Plaintiff relies principally upon Rebenstorf v. Metropolitan Life Insurance Co., 1939, 299 Ill.App. 71, 19 N.E.2d 420, and the decisions of this court in Scanlan v. Metropolitan Life Insurance Co., 1937, 93 F.2d 942, and in Nelson v. Business Men's Assurance Co. of America, 1939, 108 F.2d 363. The Rebenstorf decision was by an intermediate appellate court of the First District of Illinois. Leave to appeal the Rebenstorf decision was denied by the Illinois Supreme Court, 299 Ill.App. xvii.

The insurance policy in the Rebenstorf case contained clauses similar to those under consideration in the case at bar. On Christmas Day, 1934, the insured was in an automobile collision. After he was taken home he complained of severe pain over his 4th, 5th, and 6th ribs on his right side. A physician was called, who taped him about the chest and abdomen. X-rays taken four or five days later did not reveal any fractured bones. No symptoms of abnormality of the abdomen were noted prior to February 14, 1935. Insured's gall bladder was not functioning properly due to the presence of stones, and on April 1 an operation was performed and it was removed. The testimony revealed that insured's gall bladder probably had not functioned properly for many years. On April 3 insured died, it being the opinion of the operating physician that the stress and strain of the operation produced heart failure. The court, after pointing out that the operation caused a strain upon an existing weak heart, said [299 Ill.App. 71, 19 N. E.2d 425]:

" * * * In a case of this character why should not the real test be whether or not the injury itself was accidental? If the accident, when operating upon either a healthy or unhealthy body, causes death by putting in motion a chain of events which can be directly traced back to the accidental injury, why then should not such accident be considered the sole cause of the death? * * * We are impelled to hold that the question of whether Rebenstorf's death within the contemplation of the terms of the policy before us was caused solely as a result of his accidental injury was properly submitted to the jury and that there was sufficient evidence to warrant the jury in resolving this question in plaintiff's favor."

In the Rebenstorf case the court cited Scanlan v. Metropolitan Life Insurance Co., supra, which was decided by this court prior to the date of the decision in Erie Railroad Co. v. Tompkins, supra. In the Scanlan case, the insured was injured in an automobile collision. He sustained two broken ribs, a wound to the left knee, and a bruise on the upper portion of his left leg about the size of the palm of his hand. He had immediate and continued competent medical and nursing attention. On the fifth

day after the accident his leg became inflamed. By November 19 the inflammation and soreness subsided and this condition remained without change until his death on November 22. A blood clot was found near an enlarged varicose vein in his leg, but a portion of said clot was missing. Medical testimony was that a portion of this clot (trombos) lodging in the pulmonary artery caused death. Conceding for the purpose of the case that the varicose veins of the insured were a bodily infirmity, this court said 93 F.2d at page 946:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded. * * *"

The court's conclusion was that the evidence was sufficient to support the verdict of the jury that the injury was the proximate and sole cause of death.

Both the Rebenstorf and Scanlan cases were cited with approval by this Court in Nelson v. Business Men's Assurance Co. of America, supra, decided after the date of the decision in Erie Railroad Co. v. Tompkins, supra. The policy there considered insured against loss resulting from bodily injuries effected directly and independently of all other causes through accidental means. In an endeavor to lift a gas stove the insured slipped, striking the right side of his abdomen against a door jam. He complained of severe pains. The following day he was taken to a hospital and operated and was found to have a ruptured gall bladder. Six days later he died of peritonitis. There was medical testimony to the effect that the diseased condition of the gall bladder contributed to its rupture. This court held that plaintiff's evidence tended to prove a prima facie case that the jury might have found death resulted solely from bodily injury directly and independently of all other causes through accidental means.

We think that whether the trial court erred in granting the motion of defendant for summary judgment dismissing the complaint depends on whether the Rebenstorf case or the case of Crandall v. Continental Casualty Co., 1913, 179 Ill.App. 330, cited by defendant, correctly states the law of Illinois. In the latter case, decided by an intermediate appellate court for the Second District of Illinois, the insured had eaten some meat pie, a portion of which became lodged in his esophagus. A physician pushed the obstruction into the stomach, but within a day the insured died. An autopsy disclosed a large abscess beneath the esophagus. The court, in deciding for the defendant, classified accidental injuries associated with disease or bodily infirmities into three classes, 179 Ill.App. at page 335:

"First. Accidents that cause the disease which causes death; as for instance, accidents that cause septicaemia or blood poisoning, followed by death.

"Second. Accidents that cause the death of a person suffering from disease or bodily infirmity, which had no causal connection with the death; as for instance, death from gun shot wound of a person suffering from tuberculosis or heart disease.

"Third. Accidents to persons suffering from pre-existing disease or bodily infirmity, where death results from the accidental injury, and the pre-existing disease or infirmity, acting together; as for instance, an accidental injury to a person in the last stages of heart disease, that only because of such disease, results in sudden death."

The court held that in the first and second class of cases the accident alone is to be considered as the sole cause of the injury or death, but as to the third class said, 179 Ill.App. at page 343:

"When at the time of the accident there was an existing disease, which, cooperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes."

In support of the correctness of the Crandall ruling, defendant cites several additional cases. In Welte v. Metropolitan Life Insurance Co., 305 Ill.App. 120, 27 N. E.2d 63, the appellate court of Illinois for the Second District cited with approval its former decision in the Crandall case. The cases of Robison v. United States Health & Accident Insurance Co., 1915, 192 Ill. App. 475, and Wayne v. Travelers Insurance Co., 1921, 220 Ill.App. 493, are easily distinguishable, but in any event they were decided by the appellate court of the First District, and the Rebenstorf case is the latest expression we have from that court. Defendant also cites Ebbert v. Metropolitan Life Insurance Co., 289 Ill.App. 342, 7 N. E.2d 336, where the insured died while undergoing an operation for removal of his tonsils; Strehlow v. Aetna Life Insurance Co., 1913, 183 Ill.App. 50, where the court held it was a jury question whether the disease was of traumatic origin and a verdict for the plaintiff was sustained; Schroeder v. Police & Firemen's Insurance Association, 1939, 300 Ill.App. 375, 21 N.E. 2d 16, where there was no evidence of trauma and insured died from the degenerative condition of his heart; and Klinke v. Great Northern Life Insurance Co., 1943, 318 Ill.App. 43, 47 N.E.2d 506, where testimony and the autopsy showed insured suffered from dilatation of the heart and leukemia, and the court held there was sufficient proof to support the jury's finding of accidental death solely due to a dilated heart caused by the fall sustained by the insured ten days prior to his death, bringing the case within the second classification (as hereinabove stated), and sustained the verdict for the plaintiff. We do not consider that these cases are indicative of which rule of law the Supreme Court of Illinois would adopt.

We are therefore faced with this situation: the Illinois Second District court has adopted a rule of law which would justify the summary judgment for the defendant herein; the Illinois First District court holds to a contrary view, and the prior decisions of this court in the Scanlan and Nelson cases are in accord therewith. We believe that the weight of authority throughout the country supports the rule announced in the Rebenstorf, Scanlan and Nelson cases, and are justified we think, in concluding that the Supreme Court of Illinois would hold with the majority rule.

Since dismissal of the complaint herein by summary judgment was based almost entirely on the court's appraisal of the opinion evidence, we conclude that, applying the rule which we believe will be adopted by the Supreme Court of Illinois at such time as the question is there presented, the trial court committed reversible error in granting the motion for summary judgment. This cause is remanded for trial on the merits.