Rosa Simmon, Plaintiff-Appellee, v. Iowa Mutual Casualty Company, DeWitt, Iowa, Defendant-Appellant.

Gen. No. 10,602.

Opinion filed December 30, 1952. Rehearing denied April 9, 1953. Released for publication April 9, 1953.

Sollo, Graham & Califf, of Moline for appellant; Robert G. Graham, of Moline, of counsel.

Eagle & Eagle, of Rock Island, for appellee.

Mr. Justice Wolfe delivered the opinion of the court.

On June 30, 1948, Rosa Simmon was injured as a result of the negligence or wilful and wanton misconduct of James Burke who was driving a 1939 LaSalle Sedan which was owned by his wife, Lydia Burke. Rosa Simmon started a suit in the circuit court of Rock Island, county, against James Burke for the damage she had received on account of his negligence and recovered a judgment against him for $7,000.

Nothing was recovered on this judgment against James Burke and Rosa Simmon then started a suit against the Iowa Mutual Casualty Company seeking to recover from it on the theory that a policy of insurance by the company to Lydia Burke covered the accident in question. A trial was had resulting in a judgment finding against the defendant, Insurance Company, and assessed the plaintiff's damages at $7,000. From this judgment the case was brought to this court for a review by the Insurance Company.

The insurance policy sued upon provided among other things that when an accident occurs, written notice should be given by, or on behalf of the insured to the company or any of its authorized agents as soon as practical. Such notice shall contain particulars sufficient to identify the insured, and all reasonable obtainable information respecting the time, place and circumstance of the accident, the names and addresses of the injured and all available witnesses. The policy also provided that no action should lie against the company, unless the insured had fully complied with all the conditions of the policy.

The accident occurred on June 30, 1948, but no notice whatsoever was given to the company, until August 7, 1948, and the notice that was then given to the company, was not given on behalf of the insured, but by the attorneys representing the plaintiff in this lawsuit.

The evidence discloses that after the accident Lydia Burke, the insured, paid two premiums on the insurance policy to the agent of the company without informing him or the company of the accident, and no sufficient excuse appears from the evidence why she failed to do so. A bank financed the automobile deal and the policy of insurance was held by the bank. Mrs. Burke visited the bank several times after the accident and before a suit was started, and did not mention to them that there had been an accident. It was not until seventy-two days after the accident that the Insurance Company received any notice from the insured about the accident.

The chief assignment of error is that Lydia Burke, the insured, failed to notify the Insurance Company as soon as practicable after the accident. In the early case of *Knickerbocker Insurance Company v. Gould,* 80 Ill. 388, a similar case was being considered by the Supreme Court of Illinois, and we find in the syllabus the following: "Where there is no dispute

3

as to the facts of the case, it is a question of law whether due diligence has been used in giving notice of a loss.'' This case was followed by the Supreme Court of Mass. in *Depot Cafe Inc. v. Century Indemnity Co.,* 72 N. E. (2d) 533. In the opinion we find the following: ''The burden of establishing that written notice of the accident in question was given 'as soon as practicable,' as provided in clause 8 of the policy, rested upon the plaintiff. . . . In the consideration of what is a reasonable time the rule has been stated that 'What is a reasonable time when the facts are not in dispute is a question of law to be decided by the court.' . . . In the present case the pertinent facts are not in dispute. The jury would have been obliged to find that, for a period of forty-six days after having received notice in writing of the occurrence of the accident in question from the attorney for Burns, the plaintiff did not forward that notice to the defendant and also did not give written notice of the occurrence of the accident to the defendant. There is nothing in the evidence to show any extenuating circumstances attendant upon that failure.'' It is insisted by the appellant that the case of *Higgins v. Midland Casualty Co.,* 281 Ill. 431, lays down a different rule from the foregoing cases. In that case the facts were in dispute and no doubt under such circumstances all disputed questions of fact (when a case is tried before a jury), should be submitted to them for their consideration, but here in our present case there is no dispute at all in regard to the facts.

 It is insisted by the appellee that the defendant does not show why it was prejudiced by not being notified as provided in the policy, and cite the case of *Kennedy v. Dashner,* 319 Mich. 491, decided by the Supreme Court of Michigan, reported in 30 Northwestern Reporter, second series at page 46. It will

4

be observed in this case that the Insurance Company was present in court and defended the original action. The plaintiff obtained a judgment against the owner of the automobile for $5,000 and later started a garnishment suit against the Insurance Company to recover the amount of the judgment. This is not the rule in Illinois.

In the case *Keehn v. Excess Ins. Co. of America* Reported in 129 Federal Reporter, second series at 503, the Circuit Court of Appeals, Seventh Circuit of Illinois, had the same question presented to it. The trial court held that the failure to give notice to the defendant of the original accident in compliance with the provision of the Insurance contract was such as to bar recovery by the plaintiff. In the opinion we find this language: "(1) Plaintiff cites and discusses authorities from a number of jurisdictions, as well as numerous text books, in support of his contention as to the majority rule in construing a provision in insurance contracts as to notice and proof of loss. In our view, a review of such authorities would serve no good purpose—in fact, it would be wasted energy. What may be the rule in some other jurisdiction, or what rule is supported by the weight of authority, is of little consequence since *Erie R. Co. v. Thompkins,* 304 U. S. 64, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A. L. R. 1487. We must look for guidance to the Illinois decisions and those only.

"Unfortunately for plaintiff, the effect to be given the provision of the contract in dispute has been decided favorably to defendant's contention in Niagara Fire Insurance Co. v. Scammon, 100 Ill. 644, and Scammon v. Germania Insurance Co., 101 Ill. 621. We see no occasion to analyze or discuss these cases for the reason that plaintiff, in his brief, frankly concedes they support the position of the defendant. Nor is it

5

claimed that the rule of those cases has been subsequently overruled or modified by the Supreme Court. It is sought to dissipate their effect by reference to what is claimed to be the majority rule and by general statements appearing in certain decisions of the Appellate Courts of Illinois, apparently not in harmony with what the Supreme Court held in the Scammon cases. As already stated, however, we cannot accept any so-called majority rule contrary to that announced by the Illinois Supreme Court, and likewise, we would not be justified in repudiating a holding of that court because of certain language appearing in decisions of Appellate Courts apparently to the contrary. We shall, therefore, not discuss the Appellate Court decisions relied upon by the plaintiff.

"The court also found that the failure to give notice deprived defendant of the right and opportunity to associate with Central Mutual in defense and control of the Snow suit, and that the rights of defendant were prejudiced thereby. Plaintiff argues there is no justification for this finding, as there was no proof that the results would have been different if the defendant had been permitted so to do. In view of the decisions in the Scammon cases, the finding of the court in this respect was perhaps immaterial, but even if so, we think it was justified. The right was provided by the terms of the contract and we are of the view that the deprivation of such right would constitute prejudice without any actual proof that the results of the litigation would have been different."

To the same effect is *Preferred Acc. Ins. Co. of New York v. Castellano* reported in Vol. 148 Federal Reporter, Second Series, at Page 761. It is claimed in that case that the defendant company made no affirmative showing that the plaintiff's noncompliance of the terms of the policy caused it actual prejudice, and as-

6

sert that in the absence of such a showing the noncompliance is no defense to an action on the policy. The court then says: "We cannot agree. The usual rule is otherwise; (citing cases.) In determining whether a condition to co-operate has been broken, we are dealing with contract rights, and if there has been a breach, prejudice need not appear."

It seems to be the well-settled rule of law that the injured person's rights are no better than those of the insured, and the insurer may assert any defense against the injured party which it could assert in a suit by the insured. Accordingly if the insured breaches material terms of the policy by means of which the insurer would be released of liability to insured, the injured person cannot recover against the insurer. *Firebaugh v. Jumes,* 341 Ill. App. 1.

Under the undisputed facts in this case Lydia Burke, the insured, went to the agent who wrote the insurance for her and paid two premiums on the same after the accident occurred and made no mention of the accident whatsoever. She went to the bank where she knew the insurance policy was held as collateral for the loan on her automobile, and she made no effort whatsoever, to advise either the agent or the Insurance Company of this accident. It is the opinion of this court that she did not comply with the terms of the policy in giving notice of this accident, as soon as practicable. The judgment therefore will be reversed.

*Judgment reversed.*